**SHINTECH INCORPORATED, Appellant,**

v.

**GROUP CONSTRUCTORS, INC., Appellee.**

No. A14–82–552CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 31, 1985.

Rehearing Denied Feb. 28, 1985.

George E. Bowles, Robert T. Mowrey, Locke, Purnell, Boren, Laney & Neely, Dallas, John R. Gilbert, Gilbert & Gilbert, Angleton, for appellant.

David J. White, Robert L. Meyers, III, Jones, Day, Reavis & Pogue, Dallas, Wiley Thomas, Angleton, for appellee.

Before J. CURTISS BROWN, C.J., and CANNON and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

On appellee's motion for rehearing, the Court's opinion issued on November 8, 1984 is withdrawn and the following is substituted therefor. Appellant's motion for rehearing is overruled.

Appellee, Group Constructors, Inc., as prime contractor, filed suit against appellant and owner, Shintech Inc., for breach of a construction contract and alternatively for recovery under quantum meruit. A nonjury trial resulted in judgment for Group Constructors, Inc. against Shintech for $483,400.28 with prejudgment interest of $33,771.79 plus attorney's fees.

Appellant, Shintech, raises points of error relating to the following matters: 1) interpretation of the contract; 2) whether Shintech breached the contract; 3) whether appellee had a right to recover under quantum meruit; 4) whether there existed a mutual mistake; 5) whether Shintech made misrepresentations to appellee; 6) whether the parties abandoned the construction contract; and 7) the amount of damages which were awarded to appellee. Shintech also contends that the trial erred in its failure to find in favor of its affirmative defenses which include failure of condition precedent, assumption of risk, waiver, estoppel, and payment. We affirm the judgment of the trial court.

In 1979, appellant contracted with H.B. Zachry Company for expansion of its polyvinyl chloride (PVC) plant. Zachry was responsible for performing all work on the expansion project, including the mechanical construction and the electrical and instrumental work. The contract was on a cost-plus basis which meant that appellant, as owner, was to pay all costs incurred by Zachry plus a fee.

During the summer of 1980, appellant determined that the expense of Zachry's work was exceeding the initial projection and decided to obtain bids for the remainder of the work. On August 27, 1980, appellee, Group Constructors, Inc., submitted a bid proposal to furnish all labor, construction services, and supplies necessary to construct mechanical or piping work on the plant expansion project for the lump sum price of $1,119,478. After discussions of the bid and contemplated work, appellant issued a letter of intent on September 19, 1980. This was signed by appellee. Appellee was required to begin work on September 22, 1980. The formal contract, which stated it was entered into on September 19, 1980, was not actually signed by the parties until December 2, 1980. Under the agreement appellant was to furnish materials for appellee's work.

Appellee brought suit against appellant for damages allegedly caused by appellant's interference with the efficiency of its work. Appellant allegedly interfered in the following ways: 1) appellant failed to

timely and continuously furnish material for use by appellee; 2) appellant furnished materials for installation which were erroneously prefabricated by the previous contractor, Zachry; 3) appellant made excessive design errors, changes, and extra work orders; 4) appellant constructively accelerated appellee's work by delaying it through the acts mentioned above while refusing to extend the work schedule; and 5) appellant accelerated work through imposition of an additional swing shift. Appellee contends that appellant assumed liability for the damages resulting from these acts on the basis of Attachment A, paragraph 4 of the contract which provides:

> 4. A construction schedule will be established as early as feasible in the project which will be reviewed and approved by the client. *Upsets of this schedule caused by acts of the client or those over which he controls causing undue expense on the Contractor shall be for the Owner's account.* (emphasis added)

We also recognize that a contractor is entitled to recover damages from an owner for losses due to delay and hindrance of its work if it proves: (1) that its work was delayed or hindered, (2) that it suffered damages because of the delay or hindrance, and (3) that the owner was responsible for the act or omission which caused the delay or hindrance. *City of Houston v. R.F. Ball Construction Co.,* 570 S.W.2d 75, 77 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.). The trial court determined that appellee was entitled to $438,-400.28 as compensation for the loss in efficiency caused by appellant.

Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's findings that it committed each of the above mentioned acts and that each of these acts caused damage to appellee through loss of efficiency. Appellee, as plaintiff, had the burden of proof on each of these findings. In considering legal insufficiency points of error the court will consider only the evidence tending to support the finding, viewing it in the most favorable light in support of the finding, giving effect to all reasonable inferences that may be drawn therefrom, and disregarding all conflicting evidence. If upon such review the court finds there is a complete absence of evidence of probative force to support the finding, or there exists only a scintilla of evidence to support it, the point must be sustained. *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). In considering factual insufficiency points of error, the court examines the whole record to determine not only that there is some evidence to support the finding, but also to determine whether considering all the evidence, the finding is not manifestly unjust. If it is so weak that the finding is manifestly unjust the court will sustain the point. *Burnett v. Motyka,* 610 S.W.2d 735 (Tex. 1980); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1952).

We first review appellant's points of error related to the trial court's findings that:

1) Appellant represented that it had substantially all the materials on hand and that they would be furnished to appellee on a continuous basis.

2) On September 18, 1980, appellant sent appellee a letter, which advised appellee to give two weeks advance notice for unfabricated piping material to be furnished by appellant.

3) By reason of the expedited construction schedule desired by appellant and the need for immediate installation work to begin for such a schedule to be possible, appellant waived any requirement of two weeks advance notice for appellant's filling of material requisitions during the early period of the construction and until October 15, 1980.

4) Appellant substantially and repeatedly failed to furnish material to appellee on a continuous basis and/or within 14 days of requisitioning, which hindered and interfered with the ability of appellee to perform its work with reasonable efficiency and caused loss of

productivity and extra work for appellee.

In point of error eleven appellant contends that the trial court erred in rendering judgment for appellee because, as a matter of law, all provisions of the agreement can be reconciled and harmonized so as to make appellant liable for only its willful acts which upset appellee's work schedule. Appellant asserts that Article XII of the contract exculpates it from liability for damages caused by its delay in furnishing materials so long as the delay is not intentional.

ARTICLE XII. Materials Furnished by Owner or Agent

12.01 Responsibility—All materials, supplies, equipment, labor, services or any other things required for the performance of the work are to be furnished by CONTRACTOR unless the specifications otherwise expressly provide. In case the specifications expressly provide that any materials, supplies, equipment, labor, services or any other things shall be furnished by other than CONTRACTOR, then OWNER shall use reasonable efforts to have same furnished at the time required by CONTRACTOR *but OWNER shall not be responsible for any delay in the furnishing thereof.* When requested by CONTRACTOR, OWNER shall furnish CONTRACTOR with all available information it may have as to location, availability, delivery date and other data on all OWNER furnished materials, supplies, equipment, labor, services, or other things. (emphasis added)

This article appears to be in conflict with Paragraph 4 of Attachment A of the contract which states that upsets of the construction schedule caused by acts of appellant or those which he controls causing undue expense to appellee shall be for appellant's account. Attachment A, paragraph 11, states that in the event of discrepancies between the Lump Sum or Unit Price Construction Contract dated September 19, 1980 and attachment A, then attachment A will take precedence. Thus if a conflict does exist between paragraph 4 of attachment A and Article XII, the exculpatory part of Article XII is rendered ineffective.

Appellant asserts that attachment A and Article XII can be harmonized if the "acts of the client" language of paragraph 4, attachment A is interpreted to mean willful, intentional acts. Appellant contends that if .the language is interpreted in this way, appellant is liable only for willfully or intentionally upsetting appellee's schedule.

■ We agree that under paragraph 4, attachment A, that appellant is liable for only intentional acts causing delay. But we reject appellant's illogical conclusion that the paragraph means that appellant is only liable if it intends the act to cause delay. The obvious meaning of paragraph 4, attachment A is that if appellant intentionally does an act and that act causes delay in appellee's schedule, then appellant is liable for the resulting damages. Whether appellant intended its acts to cause delay is irrelevant. The paragraph does not limit liability to acts intended to cause delay; it imposes liability on all acts causing delay whatever their intended result.

We believe that the intention of the parties in Article XII was to exculpate appellant from all liability for delays in the furnishing of materials. The United States Court of Claims in *Grant Construction Co. v. Burns,* 93 Idaho 408, 443 P.2d 1005 (1968) interpreted a provision in a government construction contract with almost the identical language as contained in Article XII. The contract considered in *Grant* stated:

Article 12. Materials Furnished by Owner or Agent.

No materials, supplies, equipment, labor, services or any other things required for the performance of the work hereunder are to be furnished by the Owner or Agent, unless the specifications otherwise expressly provide. In case the specifications expressly provide that any materials, supplies, equipment, labor, servic-

es or any other things shall be furnished by the Owner or Agent, the Owner or Agent, as the case may be, shall use reasonable efforts to furnish the same when required by the Contractor, *but neither the Owner nor the Agent shall be responsible for any delay in the furnishing thereof.* (emphasis added)

The court held that the article was intended to relieve the government from all liability for delays caused by it, at least in the absence of fraudulent or malicious or arbitrary conduct. *Id.* at 246.

■ We recognize that under the rules of contract construction that an interpretation that enforces one contract term by completely nullifying another must be rejected unless the two clauses irreconcilably conflict. *Mercer v. Hardy,* 444 S.W.2d 593 (Tex.1969). Paragraph 4, attachment A imposes liability for acts by appellant causing upsets in appellee's schedule. Article XII exculpates appellant from liability for delays in the furnishing of materials which obviously could cause upsets in appellee's schedule. We can find no reasonable interpretation of paragraph 4, attachment A and Article XII which will reconcile the conflict between them. As paragraph 11, attachment A provides that attachment A takes precedence over the rest of the contract if there is a discrepancy, we hold that the exculpatory portion of Article XII is void. Appellant's point of error eleven is overruled.

Points of error twelve and thirteen are directly related to point of error eleven and are overruled as well.

■ Appellant's points of error one, two, seven, eight, nine, and ten are all related to whether the evidence is legally and factually sufficient to support the trial court's finding that appellant caused upsets to appellee's work schedule. As stated earlier, appellant was liable under paragraph 4, attachment A for the damages resulting from the upsets caused by it. We have reviewed the record and find ample evidence to support the trial court's finding. The evidence shows that appellant upset appellee's work schedule by excessive design errors, extra work orders, prefabrication errors, and through imposition of an additional swing work shift. Also appellant failed to brief and argue these points of error. It is well settled that points of error are required to be supported by argument and authorities under Rule 418(e) of the Texas Rules of Civil Procedure, and if not supported, the points are waived. *Ozuna v. Dyer Fruit Box Manufacturing Co.,* 606 S.W.2d 334, 337 (Tex.Civ.App.—Tyler 1980, no writ); *Burgess v. Sylvester,* 143 Tex. 25, 182 S.W.2d 358, 360 (1944).

■ Appellant's points of error five and six challenge the legal and factual sufficiency of the evidence to support the trial court's finding that appellant's requiring appellee to work overtime was in violation of the agreement. Appellant has also failed to brief and argue these points of error and has therefore waived them.

■ Appellant's points of error sixteen through twenty-five challenge the trial court's findings which entitled appellee to an alternative recovery in quantum meruit. The trial court impliedly found that a valid contract existed between the parties which covered all the services rendered by appellee when it awarded appellee $483,400.28, as damages for breach of contract. This implied finding is supported by the record. The right to recover in quantum meruit is based upon a promise implied by law to pay for beneficial services rendered and knowingly accepted. *Davidson v. Clearman,* 391 S.W.2d 48 (Tex.1965). If a valid express contract covering the subject matter exists there can be no recovery on a contract implied in law. *Woodard v. Southwest States, Inc.,* 384 S.W.2d 674 (Tex. 1964). It was improper for the trial court to award appellee recovery for its losses under two opposing theories of recovery which are based upon contradictory findings of fact. In view of our holding that appellee is entitled to recover its proven losses under its breach of contract action, there is no need for us to review appellant's points of error related to the trial

court's award of recovery under quantum meruit.

 Appellant's points of error thirty and thirty-one contend that the trial court erred in rendering judgment for appellee because appellee failed to comply with the written notice requirements under the agreement and did not fulfill the conditions precedent for claiming breach of contract. We have found that appellant breached the contract in ways unrelated to the notice requirements in the contract. When an owner breaches a construction contract, it relinquishes its contractual procedural rights concerning change orders and claims for additional costs. *North Harris County Junior College District v. Fleetwood Construction Co.*, 604 S.W.2d 247, 254 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.); *City of Baytown v. Bayshore Constructors, Inc.*, 615 S.W.2d 792, 793–794 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ). Points of error thirty and thirty-one are overruled.

Appellant's points of error thirty-two and thirty-three contend that the trial court erred in rendering judgment for appellee, because appellee assumed the risk for the delays and hindrances for which appellant has been held liable. Appellant asserts that appellee assumed this risk under paragraph 1.02 of the Agreement which states in part:

> .... Having fully acquainted itself with the work, the site of the work, its surroundings and all risk in connection therewith, the CONTRACTOR assumes full and complete responsibility for completing the work for the compensation and within the time provided in Paragraph 1.03.

 This provision must be interpreted consistently with paragraph 4 of Attachment A of the Agreement which states that appellant shall be liable for causing upsets in appellee's work schedule. In paragraph 1.02, appellee agreed to complete the work for the agreed compensation. Part of the compensation due appellee under the Agreement are expenses which result from upsets of its work sched-

ule caused by appellant. Appellee did not assume the risk for actions of appellant which upset its schedule. More specifically, we reject appellant's contention that appellee assumed the risk of defective specifications. We find no evidence that appellee had knowledge of defective specifications prior to beginning its work. Where the contract is silent on the subject, there is an implied warranty that the plans and specifications for a construction job are accurate and sufficient for the purpose in view. *Newell v. Mosley*, 469 S.W.2d 481, 483 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r.e.). Points of error thirty-two and thirty-three are overruled.

 Appellant contends in points of error thirty-four and thirty-five that appellee waived its claims against appellant. Appellant cites *Rupp v. Mountain States Telephone and Telegraph Co.*, 606 P.2d 1189 (Utah 1980), for the proposition that if the owner breaches the contract and the contractor agrees to modify the contract by change order for reimbursement, it has waived the breach. This principle has no application to this controversy where the damages sought by appellee are for upsets to its schedule caused by excessive change orders by appellant. Appellee has not waived its right to recover under paragraph 4, attachment A of the Agreement by accepting compensation for change orders. The changes and extra work clauses of the Agreement do not cover impact costs resulting from appellant's hindrance of efficient work. *See Board of Regents of the University of Texas v. S & G Construction Co.*, 529 S.W.2d 90, 96 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.). Points of error thirty-four and thirty-five are overruled.

 Appellant contends in points of error thirty-six and thirty-seven that appellee is estopped under the contract and by its actions from asserting its claims against appellant. Appellant asserts that appellee is estopped because its claim against appellant conflicts with its contractual representation in paragraph 1.02 of the Agreement.

*Hawn v. Hawn*, 574 S.W.2d 883, 886 (Tex. Civ.App.—Eastland 1978, writ ref'd n.r.e.). As discussed earlier under points of error thirty-two and thirty-three, there is no conflict between paragraph 1.02 and appellee's recovery under paragraph 4, Attachment A.

▆ Appellant also asserts that appellee is estopped because it continued to obtain benefits under the change order provision of the agreement. Appellant's acceptance of compensation under the change order provision does not deny appellant its contractual right to seek compensation for impact costs of change orders under paragraph 4, Attachment A. We see no inconsistency in appellee's seeking both compensation for services under the change order provision and compensation for its impact costs under paragraph 4, attachment A. Points of error thirty-six and thirty-seven are overruled.

▆ Appellant's points of error thirty-eight and thirty-nine which contend that appellant has fully paid appellee are overruled, since we have held that appellant is liable for impact costs of the upsets caused to appellee's schedule and appellee has not been paid for these costs.

▆ Appellant contends in points of error twenty-six and twenty-seven that the evidence is legally and factually insufficient to support the trial court's finding that appellant's acts caused appellee damages of $483,400.28. In this case the evidence presented by appellee and appellant on the issue of damages was extensive. There were many conflicts and contradictions between the evidence presented by the parties. Each party vigorously attacked the reliability of the other's evidence. Our function as an appellate court is not to judge the credibility and weight to be given the evidence nor to resolve conflicts in the evidence. This is the province of the trial judge when he is acting as the trier of fact. The findings of the trial judge may not be disregarded by an appellate court if the record discloses evidence of probative value which, with inferences reasonably drawn therefrom, supports the finding. Although this appellate court may have reached a different conclusion than that of the trial judge, we cannot substitute our judgment if the trial judge's finding is supported by probative evidence. *Johnson v. Buck*, 540 S.W.2d 393, 411–412 (Tex.Civ. App.—Corpus Christi 1976, writ ref'd n.r. e.).

▆ The amount of damages determined by the trial court is supported by both legally and factually sufficient probative evidence. Appellee presented two primary witnesses to prove the amount of damages. These witnesses explained in detail the basis and method by which they calculated the damages caused by appellant. Mr. Barnes concluded that appellee's total damages were $1,021,455.27. Mr. Myers concluded that the total damages were $919,326.06. These conclusions have some support in the record. In view of this evidence, we cannot say that the trial court's finding of $483,400.28 of damages is unsupported or manifestly unjust.

▆ Appellant presented evidence that the total losses incurred by appellee in the course of the work was $483,400.28. Because the trial court awarded damages in this amount, appellant argues that the trial court impliedly found that appellant caused the entire loss experienced by appellee. Appellant asserts that such a finding is clearly wrong, because there is substantial evidence that this loss was caused in part by factors other than acts of appellant. We reject appellant's argument for two reasons. First, appellee presented evidence that its losses greatly exceeded $483,400.28. Second, appellee presented evidence which refuted appellant's evidence that factors other than appellant's actions were responsible for appellee's losses. It was within the discretion of the trial judge to give credibility to appellee's evidence over that of appellant. *Johnson v. Buck, supra.*

We hold that the evidence is both factually and legally sufficient to support the trial court's finding of damages. Points of error twenty-six and twenty-seven are over-

ruled. Points of error twenty-eight and twenty-nine, which assert either as a matter of law or by the great weight and preponderance of the evidence that appellee was responsible for all its own losses, are overruled as well.

Appellant's third and fourth points of error contend that the evidence is legally insufficient or in the alternative, factually insufficient, to support the trial court's finding that appellant substantially and repeatedly failed to furnish material to appellee in accordance with the agreement. Before we review the sufficiency of the evidence, it is first necessary to determine appellant's obligations to furnish materials under the contract. Only then can it be determined whether appellant breached the contract by the manner in which it furnished materials.

On September 18, 1980, the day prior to appellee's signing of the letter of intent, appellant issued a letter which later became part of the contract, and which required appellee to give appellant notice two weeks in advance of the time materials would be needed. Thus appellant was obligated to furnish materials within two weeks of the requisition date. The furnishing of materials later than two weeks constituted a delay for which appellant was liable for any resulting damages.

The trial court, however, found that appellant waived the two weeks advance notice requirement until October 15, 1980. On October 15, 1980, about three weeks after appellee began work, an agent of appellant issued a memorandum to appellee which stated:

> During the past two (2) weeks since Shintech assumed the operation of the warehouse, we have tried to issue material immediately on request in order to get enough material issued for all contractors to work.
>
> It is at the point now we find it is impossible to continue to issue material on a crash basis.
>
> In accordance with the contract agreement, all contractors are to request material two (2) weeks in advance of need

date. We will do our best to expedite the material requests in an orderly manner so all work can proceed on schedule.

The trial court found that appellant discontinued its waiver through this memorandum.

 Waiver has been defined as an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it. *United States Fidelity and Guaranty Co. v. Bimco Iron and Metal Corp.*, 464 S.W.2d 353, 357 (Tex.1971). The doctrine of waiver is not applicable in this case. Appellant never relinquished a right against appellee. It simply gave performance beyond that which was required by contract for a limited time. Under the contract, appellant was obligated to furnish materials within two weeks of notice by appellee. Appellee attempted to make appellant's obligation more onerous by insisting on materials immediately upon notice. The fact that appellant was willing to exceed its obligation by furnishing materials on demand so that the construction schedule could be expedited does not alter appellant's contractual obligation. The doctrine of waiver involves the relinquishment of a known right against another party; it does not operate to create a new contractual obligation. The doctrine of waiver is defensive in nature. It cannot be used to create liability where it does not otherwise exist. *Jones v. Texas Gulf Sulfur Co.*, 397 S.W.2d 304 (Tex.Civ.App.—Houston [1st Dist.] 1965, writ ref'd n.r.e.). Thus, the trial court erred in finding that appellant waived the two-weeks notice provision until October 15, 1980.

 However, we have reviewed the record and find evidence to support the trial court's finding that appellant failed in certain instances to furnish material within two weeks of notice. The trial court correctly found that appellant breached the contract by not furnishing materials within the required time. Therefore, appellant's third and fourth points of error must be overruled.

Although the trial court erred in its application of the doctrine of waiver, appellant has not carried his burden to show that this error probably did cause the rendition of an improper judgment. Thus, such error does not require a reversal of the judgment. *Dennis v. Hulse,* 362 S.W.2d 308, 309 (Tex.1962). A review of the record demonstrates that it is improbable that this error caused the rendition of an improper judgment. This is shown by the fact that even if the evidence of damages resulting to appellee from the late furnishing of materials during the period prior to October 15, 1980, is disregarded, the evidence of damages resulting from other breaches by appellant is more than adequate to support the amount of damages found by the trial court.

Having found no reversible error we affirm the judgment of the trial court in all respects.