# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00443-CV

**Beard Family Partnership, Appellant**

**v.**

**Commercial Indemnity Insurance Company, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. 99-11363, HONORABLE DARLENE BYRNE, JUDGE PRESIDING**

---

### 44444444444444444444444444
### DISSENTING OPINION
### 44444444444444444444444444

The majority today constructs an opinion from an argument that never arose at trial, was not mentioned by either side in their appellate briefs, and was not discussed by either side during oral argument. The appellants have been defeated by an argument they never had an opportunity to defend against.

According to the majority, "[t]his case involves a surety's rights and obligations under payment and performance bonds as against its bond obligee." This must come as quite a surprise to appellee Commercial Indemnity, who did not advance a single argument based upon the payment and performance bonds which the majority deems pivotal in this case. In fact, at trial Commercial Indemnity's suit was brought pursuant to the original construction contract and the court's charge

was based on the construction contract, as were the jury's findings. Indeed, Commercial Indemnity does not dispute that it is subject to the condition precedent created by the contract between Beard and Round Rock. Its defenses to the application of the condition—throughout trial and throughout the appeal—are (1) that Beard first breached by providing inadequate plans and specifications, (2) that substantial performance trumps application of the condition precedent, and (3) equities dictate that Commercial Indemnity not be precluded from recovery. Primarily because I would decide the issue adversely to Commercial Indemnity, but also because I cannot condone case resolution where one side has been denied all opportunity to offer rebuttal, I respectfully dissent.

The majority correctly recognizes that where a condition precedent exists, liability does not arise unless and until satisfaction of the condition occurs. The majority goes on to fashion an *argument* that releases Commercial Indemnity from the application of the condition precedent due to "the intent of the parties" of the surety bond. They accomplish this result by harmonizing "conflicting clauses," of the construction contract and the performance and payment bonds. However, the majority opinion does not clarify which conflicting clauses they are attempting to harmonize.

The opinion speaks to the language of the bonds and the intent of the parties to the bonds. The first salient point to note here is that the bonds were entered into by Commercial Indemnity and Round Rock Construction and the construction contract was entered into by Round Rock Construction and Beard. Therefore, we have three different parties (Round Rock, Beard, and Commercial Indemnity) entering into three separate contracts (construction contract, payment bond, and performance bond) covering two distinct subject matters (construction and bonds). It is no surprise that we might have conflicting clauses. However, we are never told what the "conflicting

clauses" are that will not allow honoring the clear and express language of the original construction contract. The majority makes the conclusory statement that the intent of the parties makes clear that the requirement of an all-bills-paid affidavit from the contractor is not a requirement imposed upon the surety. There is no logic or evidence which will support this conclusion. The language of the performance bond indicates that the surety will "complete the [construction] contract *in accordance with its terms and conditions*," which would include the condition that the all-bills-paid affidavit be provided before final payment by Beard is due. (Emphasis added.)

The contract between Beard and Round Rock provided as follows:

> ¶ 9.10.2 Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner . . . might be responsible . . . have been paid or otherwise satisfied . . . .

Therefore, the contract expressly makes the all-bills-paid affidavit a condition precedent to payment of the final application and retainage and, as conceded by Commercial Indemnity, is a condition to which Commercial Indemnity is subject. In addition, as noted by the majority, such an affidavit is also required by section 53.085 of the property code. Section 53.085 states in pertinent part:

> (a) Any person who furnishes labor or materials for the construction of improvements on real property shall, if requested and as a condition of payment for such labor or materials, provide . . . an affidavit stating that the person has paid each of the person's subcontractors, laborers, or materialmen in full . . . .

Tex. Prop. Code Ann. § 53.085(a) (West Supp. 2002)

3

It is undisputed that Beard made several requests for the all-bills-paid affidavit. It is also undisputed that Commercial Indemnity did not provide, and has not provided to date, this affidavit, despite Beard's requests. The purpose of the affidavit is to enable Beard to deliver marketable title on the lots sold to builders or consumers. The majority writes that Commercial Indemnity's president, Schuler, testified that all claims and liens were paid. This assertion has no basis in the record. Schuler's testimony, in the most favorable light, was that "to the best of my knowledge everybody has been paid," and therefore no affidavit was necessary.

Clearly, Commercial Indemnity brought suit under the original construction contract. A party seeking to recover under a contract must prove it has met all conditions precedent. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 283 (Tex. 1998); *Trevino v. Allstate Ins. Co.*, 651 S.W.2d 8, 11 (Tex. App.—Dallas 1983, writ ref'd n.r.e.). If a contract contains conditions precedent, there must be some allegation by the plaintiff that the conditions have been met. *Texas Int'l Airlines v. Wits Air Freight*, 608 S.W.2d 828, 831 (Tex. Civ. App.—Dallas 1980, no writ). Texas Rule of Civil Procedure 54 states:

> In pleading the performance or occurrence of conditions precedent, it shall be sufficient to aver generally that all conditions precedent have been performed or have occurred. When such performances or occurrences have been so plead, the party so pleading same shall be required to prove only such of them as are specifically denied by the opposite party.

Tex. R. Civ. P. 54.

Commercial Indemnity did not plead that all conditions precedent were met in either its original petition or its first amended petition, as required by Rule 54. In fact, the only time

4

Commercial Indemnity addressed the conditions precedent in its pleadings was by its special exception to Beard's answer that Commercial Indemnity failed to satisfy conditions precedent. In its special exception, filed five days before trial, Commercial Indemnity only says that Beard has not pleaded the issue with sufficient particularity and that Beard failed to identify the specific conditions that were not met.[1]

If a plaintiff fails to plead performance of the conditions precedent he may still obtain judgment on his cause of action if he meets his burden of proving all essential elements of the cause, including performance of conditions precedent. *Grimm v. Grimm*, 864 S.W.2d 160, 162 (Tex. App.—Houston [14th Dist.] 1993, no writ); *Trevino*, 651 S.W.2d at 11. Performance of any condition precedent is an essential element of the plaintiff's case. *Trevino*, 651 S.W.2d at 11. In *Trevino*, the court stated that "[t]he law is clear that performance of a condition precedent is an essential element of the plaintiff's case on which the plaintiff has the burden of proof unless he alleges performance of all conditions precedent and the defendant fails to deny specifically performance of the conditions, as required by rule 54." *Id.* (citing *Texas Int'l Airlines*, 608 S.W.2d at 830-31); *see* Tex. R. Civ. P. 54.

Commercial Indemnity first argues that it should be excused from complying with the contract's condition precedent because the delay in completing the construction project was due to Beard's inadequate subdivision construction plans. This argument is without merit, despite the majority's assertion that the jury verdict, by implication, should be read to mean this. First,

---

[1] Beard's efforts to obtain a ruling from the trial court on this issue included requested and denied jury instruction, motion for directed verdict, and motion for take-nothing judgment.

Commercial Indemnity did not plead, prove, or submit this issue at trial so there ultimately is no finding that Beard's subdivision plans were in fact inadequate.[2]  Second, even if that were true, at most it would only be a defense to the liquidated damages owed due to late completion of the project, not to Commercial Indemnity's failure to comply with the condition precedent.

Texas courts may excuse non-performance of a condition precedent without other reason if the condition's requirement "'(a) will involve extreme forfeiture or penalty, *and* (b) its existence or occurrence forms no essential part of the exchange for the promisor's performance.'" *Lesikar Constr. Co. v. Acoustex, Inc.*, 509 S.W.2d 877, 881 (Tex. Civ. App.—Fort Worth 1974, writ ref'd n.r.e.) (quoting *Restatement (First) of Contracts* § 302) (emphasis added); *see also Varbel v. Banc One Capital Partners, Inc.*, 55 F.3d 1016, 1018 (5th Cir. 1995); *Restatement (Second) of*

---

[2] Commercial Indemnity relies on *Shintech Inc. v. Group Constructors, Inc.*, 688 S.W.2d 144 (Tex. App.—Houston [14th Dist.] 1985, no writ), for the proposition that Beard's inadequate architectural plans caused significant dely in completing the construction project; therefore, it breached the contract and, consequently, waived its procedural right to withhold payment until an all-bills-paid affidavit was received.  In *Shintech*, the appellant owner breached its contract when its acts delayed the builder's performance of the contract.  The owner argued that because the builder failed to comply with the contract's written notice requirements (which occurred subsequent to a breach by the owner), the builder did not fulfill the conditions precedent for claiming breach of contract.  The court held that "[w]hen an owner breaches a construction contract, it relinquishes its contractual procedural rights *concerning change orders and claims for additional costs*."  *Shintech*, 688 S.W.2d at 151 (citing *North Harris County Junior Coll. Dist. v. Fleetwood Constr. Co.*, 604 S.W.2d 247, 254 (Tex. Civ. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.)) (emphasis added).  Commercial Indemnity misconstrues and reads too much into *Shintech's* holding.  First, the holding comes from a case where very specific findings of breach by the owner were made, findings absent in the present case.  The court in *Shintech* held that a contractor is entitled to recover damages from an owner for *losses due to delay* and hindrance of its work if it *proves*: (1) that its work was delayed or hindered; (2) that it suffered damages due to the delay or hindrance; and (3) that the owner was responsible for the act which cased the delay or hindrance.  Commercial Indemnity did not plead or prove that Beard's subdivision plans were inadequate or that the alleged inadequacy resulted in any delay.  Additionally, the jury was not asked, nor did it find, that Beard supplied inadequate subdivision construction plans.

6

*Contracts* § 229 (replacing *First Restatement's* § 302, cmt. B (1981)) ("In determining whether the forfeiture is disproportionate a court must weigh the extent of the forfeiture by the obligee against the importance to the obligor of the risk from which he sought to be protected and the degree to which that protection will be lost if the non-occurrence of the condition is excused to the extent required to prevent forfeiture."). Texas courts have focused on the second part of this test in examining whether performing the condition precedent was the object of the contract or merely incidental to it. *Varbel*, 55 F.3d at 1018.

Neither party claims the contract in this case is ambiguous. It clearly and expressly provides that the submission of an all-bills-paid affidavit is a condition precedent to final payment. Additionally, as previously noted, such an affidavit is also required by section 53.085 of the property code "as a condition of payment," if requested. Beard repeatedly requested this affidavit. Commercial Indemnity offered no good reason for not producing the affidavit. In fact, Commercial Indemnity's president testified that any responsible owner would want an affidavit from the contractor that there were no outstanding bills. Beard's real estate lawyer testified that to get title insurance special arrangements had to be made with the title company. It cannot be said that this condition precedent was incidental to the contract. Beard clearly sought to be protected from unreleased liens and potential title problems by conditioning final payment on the receipt of an all-bills-paid affidavit. For the majority to conclude that "the intent of the parties makes clear that [the affidavit] is not a requirement also imposed upon the surety," it must *totally* ignore the risk from which Beard sought to be protected. The majority equated the existence of the payment bond with absolute protection for Beard, concluding that "[l]ien claimants thus have recourse as against the

7

surety." This assertion ignores the obvious—liens may still be filed despite the existence of a payment bond. Clearly, Beard has a strong interest in requiring the production of the affidavit.

The supreme court has recognized a limitation to a party's ability to enforce the requirement of an all-bills-paid affidavit. In *Citizen's National Bank v. Texas & Pacific Railway Co.*, 150 S.W.2d 1003 (Tex. 1941), the Railway Company's contract with the contractor allowed them to withhold final payment until "the Contractor ha[d] furnished written evidence satisfactory to the Railway, that he ha[d] paid in full all amounts that may be due by him to any and all persons who may have performed labor or furnished material or supplies to the Contractor in connection with the work." *Id.* at 1005. The supreme court held that this requirement was placed in the contract to "protect the Railway against those who might claim liens against it under our lien statutes." *Id.* at 1007. Because it "conclusively" appeared that no liens were or had ever been attempted to be fixed against the Railway, and because the limitation period had expired under which any lien could be fixed, enforcement of the requirement was deemed to be no longer of any benefit to the Railway. *Id.* at 1005, 1007.

Following this reasoning, the *Lesikar* court held that where a plaintiff subcontractor came forward with evidence that established "as a matter of law that the plaintiff ha[d] in fact prior to trial fully paid all such bills"[3] and the time had passed in which a lien against the defendant contractor could be filed, the requirement of an all-bills-paid affidavit was no longer of any benefit to the defendant and would not be strictly enforced. *Lesikar Constr. Co.*, 509 S.W.2d at 879, 881.

---

[3] The testimony of the general managers of the plaintiff as to the fact that all bills had been paid prior to trial was undisputed by the defendant. *Lesikar Constr. Co. v. Acoustex, Inc.*, 509 S.W.2d 877, 879 (Tex. Civ. App.—Fort Worth 1974, writ ref'd n.r.e.).

These cases establish that a plaintiff contractor such as Commercial Indemnity must conclusively establish that all bills had been paid prior to trial and that the time had expired under which any mechanic's lien could be fixed against the defendant. Commercial Indemnity must show that it had obtained releases for all possible liens that could be filed against the property. It is not enough for Commercial Indemnity to assert that it does not recall any lawsuits being filed for nonpayment. It must be able to establish that it has otherwise met the purpose of the all-bills-paid affidavit by showing that all bills have been paid and that the defendant is beyond peril of any lien arising out of the contractor's work. Commercial Indemnity has failed to meet this burden and therefore may not be heard to speak from its "equities" platform either. For Commercial Indemnity to advance its equities argument, it must be able to show that Beard is not at risk of suffering from outstanding claims. This, it cannot do.

For example, Beard points us to a letter from Commercial Indemnity listing several outstanding claims, including one claim which Commercial Indemnity stated it did not intend to pay because it was filed late and one claim Commercial Indemnity stated it disputed. The burden is on the plaintiff to conclusively establish that it has no claims which have been or can be fixed against the defendant. This evidence goes only to show that Beard has effectively rebutted any attempt by Commercial Indemnity to meet this burden. In a post-submission letter, Beard once again refers to this letter as evidence that claims remain open. No response has been forthcoming from Commercial Indemnity. Don Bird, Beard's real estate attorney, testified that Beard had received notice of mechanic's and materialmen's liens and that liens in fact interfered with obtaining clear title to some of the property, causing some lots to possibly be sold with liens attached. This also rebuts any

9

attempt by Commercial Indemnity to show that it has conclusively established fulfillment of its requirement to protect Beard from all liens that could be filed.

The contract specified that final payment was subject to an express condition precedent. When a party breaches a contract by failure to perform a condition precedent, it affects the enforceability of the provision to which the condition is attached. *City of Alamo v. Garcia*, 878 S.W.2d 664, 665 (Tex. App.—Corpus Christi 1994, no writ). The provisions of the contract are clear that an all-bills-paid affidavit must be provided before final payment would be owed. This affidavit was a condition precedent and in the absence of Commercial Indemnity providing the affidavit or conclusively establishing that it obtained all releases to *all* liens that had been or could be filed against Beard prior to trial, there is no liability or obligation on Beard's part and there can be no breach of contract by it.[4] To give this clause in the contract any other construction would render the all-bills-paid affidavit requirement absolutely meaningless. Thus, Commercial Indemnity, having failed to fulfill the condition precedent, was not entitled to final payment.[5]

---

[4] That an all-bills-paid affidavit can be a condition precedent to recovery of final payment under a contract has long been understood both in Texas and outside the state. *See Citizen's Nat'l Bank v. Texas & P. Ry. Co.*, 150 S.W.2d 1003, 1006 (Tex. 1941); *see also Holding Elec., Inc. v. Roberts*, 530 So. 2d 301, 303 (Fla. 1988) (stating that Florida statute requiring all-bills-paid affidavit prior to final payment "is a condition precedent to maintaining a lien foreclosure suit"); *Henderson v. Cochran*, 100 S.E.2d 910, 913 (Ga. 1957) ("It is clear that the terms of the contract [requiring an all-bills-paid affidavit] require, as a condition precedent to final payment thereunder, that the contractor furnish evidence that all bills for labor and material have been paid or that liens have been waived."); *Buttrick Lumber Co. v. Collins*, 89 N.E. 138, 139 (Mass. 1909) ("But, if earned, [final payment] was not payable if there were outstanding mechanic's liens at the date of the plaintiff's writ, for which security must be given as called for by the contract.").

[5] This raises the issue of entitlement to any amount separate and apart from the final payment, since Beard withheld both the seventh payment and the final payment. However, Commercial Indemnity did not plead for any amount other than the outstanding amount, nor were relevant jury findings obtained which might have established entitlement.

*Substantial Performance*

Commercial Indemnity next argues that even if it is found to have breached the contract by failing to provide an all-bills-paid affidavit, it may still collect damages pursuant to the substantial performance doctrine. Commercial Indemnity asserts that in the case of construction contracts, the doctrine of substantial performance allows recovery to a contractor who has breached, but substantially performed, its contract. *Dobbins v. Redden*, 785 S.W.2d 377, 377 (Tex. 1990). The question this Court must answer is whether substantial performance excuses the breach of an express condition precedent. I would hold that it does not.

While at one time the common law required strict compliance with the terms of a contract, that rule has been relaxed in the law of building contracts by the doctrine of substantial performance. The doctrine of substantial performance is an equitable doctrine which allows a builder who has breached, but nevertheless substantially completed a building contract, to recover in a contract action. *Id.* This doctrine is intended to protect the right to compensation of those who have materially and substantively performed so that their right to compensation is not forfeited by mere technical, inadvertent, or unimportant omissions or defects. Stated another way, any breach that may have been committed is immaterial. *See* 15 *Williston on Contracts* § 44.52 (4th ed. 2000).

The doctrine of substantial performance does not primarily concern itself with the substantial performance of a "condition" but with the substantial performance of an agreed exchange—the contractor's promise to build and the owner's promise to pay a certain price for the construction. *See* 8 *Corbin on Contracts* § 36.2 (rev. ed. 1999). *Corbin on Contracts* succinctly illustrates the application:

11

">. . . it is not with express conditions or interpretation that we are now primarily concerned. We are now dealing with a contract that consists of two exchanged promises requiring the rendition of two promised performances, without making either promise expressly conditional on anything. The builder promises to build and the owner promises to pay.

. . . .

It is substantial performance of what the builder promised to do, of the construction work, or the equivalent for which the owner has promised to pay, that is the 'condition' of the owner's duty to pay. It is not substantial performance of 'a condition' that must be rendered; 'substantial performance' *is* the condition—the fact that must exist before payment is due.

*Id.* Thus, substantial performance is ordinarily not applicable to excuse the nonoccurrence of an express condition precedent to a contract. *See* 15 *Williston on Contracts* § 44.53. Where the parties have not made it clear that literal and exact compliance is necessary, substantial performance will suffice; however, general acceptance of the doctrine of substantial performance does not mean that the parties may not expressly contract for literal performance. In other words, if the terms of an agreement make strict performance an express condition precedent to recovery, substantial performance will not be sufficient. *Id.*

Express contractual conditions must be literally met or performed, as opposed to constructive conditions, which arise and are implied by the courts. *See Parkview Gen. Hosp., Inc. v. Eppes*, 447 S.W.2d 487, 490-91 (Tex. Civ. App.—Corpus Christi 1969, writ ref'd n.r.e.); 8 *Corbin on Contracts* § 30.11. A constructive condition is neither an express condition nor an implied condition, rather it is a product of courts to do equity, independent of the intention of the parties, *unless language of the contract indicates a contrary intent*. *See Nutt v. Members Mut. Ins. Co.*, 474

12

S.W.2d 575, 576 (Tex. Civ. App—Dallas 1971, writ ref'd n.r.e.); 8 *Corbin on Contracts* § 30.11. Therefore, a constructive condition will fail in the face of an express condition.

Similarly, substantial performance, also being a creature of equity, must yield to the literal application of an express condition precedent. An express condition precedent must be met for liability to arise. *See Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992); *Hohenberg Bros. Co. v. George E. Gibbons. & Co.*, 537 S.W.2d 1, 3 (Tex. 1976). The substantial performance doctrine, therefore, applies to constructive conditions precedent and not to express conditions precedent. While the jury found that both parties breached the construction contract, there was no finding as to who first breached, contrary to the majority's implying that the jury found that Beard breached first. Because there was no finding that Beard first breached the contract, the performance of the condition precedent by Commercial Indemnity was a question of law that the trial court should have resolved. While liability may have arisen as to amounts other than "final payment" and "retainage," there could be no liability as to those amounts absent Commercial Indemnity's proof of satisfaction of the condition precedent.

There are no Texas cases that have addressed the issue of whether the doctrine of substantial performance applies in construction contracts when there are express conditions precedent designed to protect an owner from potential liability. Jurisdictions that have addressed this issue have held that the doctrine of substantial performance only applies in the absence of express conditions precedent. *See e.g.*, *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.3d 326 (7th Cir. 1987) (stating that although substantial performance rule seems to derive in part from maxim, "The law abhors a forfeiture," it applies only in absence of conditions precedent); *Della*

13

*Ratta, Inc. v. American Better Cmty. Developers, Inc.*, 38 Md. App. 119 (Ct. Spec. App. 1977) (holding substantial performance doctrine applies to constructive conditions precedent and not to express conditions); *Witherell v. Lasky*, 286 A.D. 533 (N.Y. App. Div. 1955) (holding that appellants' motion to dismiss should have been granted based on contractor's failure to comply with condition regarding submission of evidence of payment of potential lienors, together with his admission, untempered by any valid excuse). The rationale of these courts seems to be based on the well-settled law that one who executes a contract may protect himself from liability by a distinct and express agreement that liability will not arise until there has been compliance with certain conditions.

Although I recognize the harsh results that may be occasioned by a failure to perform a condition precedent, the complete failure to perform the prerequisite which the parties considered sufficiently substantial to make it a condition precedent to payment, cannot be excused. Therefore, I would hold that Commercial Indemnity is not entitled to damages for breach of contract because it has failed to meet the requirements of the contract. Specifically, Commercial Indemnity failed to submit an all-bills-paid affidavit which was an express condition precedent to final payment. In order to be entitled to final payment, Commercial Indemnity must either provide the affidavit or conclusively establish that all bills have in fact been paid and Beard is beyond all peril as to liens that may be filed against it.

As its seventh issue, Beard asserts that the jury's finding of zero damages for Beard was legally and factually insufficient. I concur in the result reached by the majority.

As a final matter, Beard complains of the award of attorney's fees in this case to Commercial Indemnity. Because I would find that the damage award to Commercial Indemnity must

14

be reversed, I would reverse the award of attorney's fees to Commercial Indemnity and hold that neither party recover attorney's fees.

_____

David Puryear, Justice

Before Justices Kidd, Patterson and Puryear

Filed:   August 29, 2003

15