Criminal Case Template














COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




EL PASO COUNTY LOWER
VALLEY WATER DISTRICT,


 Appellant,


v.


OSCAR RENDA CONTRACTING,
INC.,


 Appellee.

§


§


§


§


§

No. 08-01-00473-CV


Appeal from the


327th Judicial District Court


of El Paso, Texas


(TC# 98-921)




M E M O R A N D U M O P I N I O N



 This is an appeal from a jury verdict in a breach of contract case. For the reasons
stated, we affirm the judgment of the trial court.

I. SUMMARY OF THE EVIDENCE


 Appellee, Oscar Renda Contracting, Inc. ("ORC"), is a public works contractor that
performs utility work for cities in Texas. ORC lays water and sewer pipe, builds compost
waste water and water treatment plants and tunnels and river crossings. ORC was awarded
a contract with Appellant, El Paso County Lower Valley Water District ("LVWD"), in March
of 1996 for the construction of a project for the City of Socorro known as, Socorro EDAP
Phase II West Interceptor, Lift Station and Collectors Project, to provide water and waste
water services to the residents in the City of Socorro, Texas ("the project"). ORC was to
furnish and install several thousand lineal feet of sanitary sewer lines and collector lines,
furnish and install several hundred manholes, remove and replace several thousand square
yards of pavement, and furnish and install a lift station. 

 Funding for the project was provided by the Texas Water Development Board
("TWDB"). The contract between the parties consists of several documents which included
the Standard Form of Agreement ("the Agreement"), the bid specifications, ORC's bid, and 
the Standard General Conditions and the Supplementary General Conditions. The
Agreement identifies the following entities as having responsibilities under the agreement: 
LVWD as Owner, ORC as Contractor, John Carollo Engineers ("Carollo") as Engineer, and
Parkhill, Smith & Cooper, Inc. ("PSC") as Design Engineer. Originally, the contract
included items bid as a unit price with some items bid on a lump sum basis. 

 ORC was to begin work under the contract in May, 1996. Almost immediately,
however, a dispute arose with regard to re-paving of the street surfaces after installation of
the lines as required by the contract. A City of Socorro Ordinance required that any re-paving of street surfaces be completed with the use of hot mix asphalt concrete ("HMAC")
instead of repaving with asphalt using a double penetration method. The contract called for
ORC to re-pave the streets replacing the existing surface with the same type of product in
place. Under the General Conditions section of the Agreement, Article 6.14.2 provides that
any "necessary changes will be authorized" under the contract if the contractor notifies
LVWD that the specifications are at variance with any laws or regulations. ORC notified
LVWD of the city ordinance and the conflict with the written specifications and requested
guidance and clarification as well as additional time for this delay. LVWD initially
instructed ORC to ignore the ordinance and resurface any involved streets using the double
penetration asphalt method. LVWD informed ORC that if it complied with the ordinance
and used HMAC, it would only be paid for double penetration work. 

 The issue was finally resolved five months later, ORC requested but was denied
additional time for this delay as well as other delays and problems that arose while the re-paving conflict was not addressed. As a result of the delays, the work had to be performed
during the colder months, which affected the adhesion of the materials and overall quality
of the work. After completion of the work, the streets developed pot holes and other
problems, allegedly due in part to the fact that PSC allowed traffic on the newly paved roads
without allowing an adequate time for the surfaces to cure. 

 Because remedial repairs to the streets were needed, PSC withheld funds from the
amounts due to ORC under the contract, initially withholding over $613,000, an amount
more than ten times the cost for completing the repairs. This figure included an amount
based on an estimate from LVWD's consultant of $492,000, in addition to the original sum
owed under the contract in the amount of $120,000. As a result, all payments to ORC for any
of the work it had completed were delayed. PSC recommended withholding payment in July
1997. In response, ORC filed a report from its consultant, McCullough and Associates,
which indicated that the repairs could be completed at a cost of only $40,000. PSC reduced
the retainage to a little over $206,000 in April 1998, and ultimately reduced the amount
withheld to the actual repair costs of $55,000. 

 Another dispute arose involving the need for ORC to use 5,019 lineal feet of C-900
pressure pipe that was not called for in the specifications. The specifications called for 1,380
lineal feet of C-900 pipe to be installed in a straight-line configuration. During the course
of the excavations to lay the pipe, however, ORC encountered over 250 instances of
unmarked or mis-marked utilities. Consequently, ORC was required to install the C-900 pipe
in ten to twenty foot increments and was forced to navigate around the unexpected
underground facilities. 

 ORC requested $60 per lineal foot for this additional work. PSC initially recognized
this as a "new work item" that justified additional compensation at a higher unit price and
recommended payment at $45 per lineal foot. PSC, however, refused to allow ORC any
additional time for the extra work. ORC refused this proposed change order because of the
failure to include more time. PSC then allowed only $26 per lineal foot for the additional C-900 pipe, which ORC contended, did not account for the additional cost or time required to
complete the work. 


 ORC complained of another deficiency in the specifications based upon the fact that
the project required installation of 229 additional service or lateral connections from a house
or lot, to the main sewer pipe, which were not included in the original specifications. This
omission required the laying of additional lines and the installation of "T" connections into
the main pipe, which slowed down the work crews significantly. In connection with this
problem, ORC requested an additional 161 calendar days be added to the project. PSC and
LVWD again refused to allow any additional time for these additional installations.

 ORC also complained about inspection techniques employed by PSC which, ORC
argued were unreasonable and impacted the productivity of the entire project. One example
cited, was the method used for testing the proper water level of the underground water table. 
The contract specifications required ORC to lower the water table to a certain depth while
laying the pipe. To achieve the lowered depths, several dewatering wells were set up
throughout the project. PSC required ORC to dig at least 500 three-foot deep test pits every
50 feet for over 25,000 lineal feet of trench. ORC contended that this additional work added
significant time to the project and was unreasonable. ORC also complained about the
amount of time PSC's inspectors waited to conduct inspection tests. ORC estimated that an
additional 63 days were added to the project due to the additional work and unreasonable
delays caused by the inspectors. Despite the fact that the contract required LVWD to allow
more time for completion of the project for delays that were not attributable to ORC's
conduct, LVWD did not allow any additional time and assessed almost $50,000 against ORC
for PSC's overtime charges. 

 As noted, ORC encountered numerous problems throughout the course of the one and
a half years it took to complete the project. Due to these problems, ORC requested additional 
time and compensation for additional work performed to complete the project. ORC alleged
that LVWD wrongfully refused to allow an increase in the price and time to account for these
problems and factors. ORC filed suit against LVWD alleging a breach of the contract
seeking damages in excess of $4,000,000. The jury found that LVWD failed to comply with
its contract with ORC and awarded $3,000,000 in vendor costs and $1,000,000 in project
equipment costs. LVWD's JNOV and motion for new trial were overruled. This appeal
follows. 

II. DISCUSSION


 LVWD brings fourteen issues on appeal. We will address the issues under the
following subheadings: waiver, conditions precedent, and damages. 

A. Waiver

 Preliminarily, we note that LVWD failed to cite authority in support of its argument
under Issues Number Two, Three, Twelve and Thirteen. These issues are therefore waived.
Tex. R. App. P. 38.1(h). 

 Issues Number Six through Fourteen relate to the damages awarded by the jury. The
various issues complain that the type of evidence admitted was improper, the evidence was
legally insufficient and no evidence, the jury's answer was against the great weight and
preponderance and generally, that ORC is not entitled to recover damages based upon any
theory submitted. LVWD appears to be complaining about the form of the question included
in the jury charge and the submission of a damages question to the jury, as well as the type
of evidence admitted by the court. We will address LVWD's complaints as complaining of
the jury charge and evidence related to the jury's verdict in this case. 

 The jury was presented with a four question charge. Questions one and two dealt with
an allegation by ORC that LVWD had violated ORC's constitutional rights and a
corresponding conditional damages question. Those questions are not relevant to this appeal. 
Question three simply asked" [d]id the El Paso County Lower Valley Water District fail to
comply with its contract with Oscar Renda Contracting Inc.?" The jury answered
affirmatively and proceeded to question number four which asked the jury to award damages. 
The jury awarded the sum of 4,000,000, 3,000,000 for vendor's costs and 1,000,000 for
project equipment costs. Instructions regarding ORC's breach of contract claims were
included in the charge. 

 LVWD now complains of the damages question on appeal. LVWD does not complain
about the instructions given nor the question submitted asking the jury to determine whether
LVWD had breached the contract. Further, LVWD admits that no proposed instruction was
tendered by trial counsel in relation to the proper measure of damages and asks this Court to
"extend the law" so that a general objection on segregation of damages (1) be considered as an
objection to an erroneous measure of damages. LVWD's complaints focus on the type of
evidence presented at trial and the jury's answers to the damages question. LVWD does not
complain about the form of the question or the instructions given to the jury. LVWD,
however, concedes that under the current state of the law because no issue or instruction was
tendered and the objection was not specific, this issue has been waived. We agree. 

 The complaining party must object to the submission of an erroneous question,
instruction, or definition. Tex. R. Civ. P. 274. If the complaint concerns an omission, the
party must request and tender a substantially correct instruction in writing. Tex. R. Civ. P.
278. If the court erroneously fails to include instructions on the proper measure of damages,
it is the complaining party's burden both to object to the charge and to tender such
instructions in substantially correct form. Tex. R. Civ. P. 278. "Any complaint as to a
question, instruction, or definition, on account of any defect, omission, or fault in pleading,
is waived unless specifically included in the objections." Tex. R. Civ. P. 274.

 In Issue Number fourteen, LVWD argues that there is no evidence of a proper
measure of damages for breach of contract. Because LVWD failed to tender an instruction
and failed to make a specific objection, Issue Number Fourteen is waived. 

 In Issues Number Ten and Eleven, LVWD challenges the factual sufficiency of the
evidence to support the damages award. In addition to failing to specifically object and
failing to tender a proper instruction, LVWD failed to preserve its factual sufficiency
complaint in a motion for new trial. Tex. R. Civ. P. 324(b)(2); Cecil v. Smith, 804 S.W.2d
509, 512 (Tex. 1991). LVWD filed two motions for new trial. The first motion was labeled
"Defendant's Motion of Judgment Non Obstante Verdicto, Motion for New Trial, and
Response to Plaintiff's Motion for Entry of Judgment" and was filed, prematurely, on April
19, 2001. LVWD did not raise a factual insufficiency complaint in this motion. On October
23, 2001, the trial court denied LVWD's Motion of Judgment Non Obstante Verdicto and
Motion for New Trial. Final Judgment was signed on October 26, 2001. Thereafter, on
November 21, 2001, LVWD filed its Second Motion for New Trial, or in the Alternative
Motion for Remittitur. It was in this second motion that LVWD first presented a factual
insufficiency complaint. 

 A premature motion for new trial is deemed filed on the date of, but immediately after,
the signing of the judgment. Tex. R. Civ. P. 306c. It follows that the court's overruling of
the motion for new trial is deemed to have been subsequent to the signing of the judgment.
Wirtz v. Massachusetts Mut. Life Ins. Co., 898 S.W.2d 414, 419 (Tex. App.--Amarillo1995,
no writ). The last day a party may file an amended or supplemental motion for new trial
without leave of court is thirty days from the date the judgment is signed, as long as the court
has not overruled the earlier motion for new trial. Tex. R. Civ. P. 329b(b). Here, LVWD's
second motion for new trial was filed after the first motion was overruled and LVWD did not
obtain leave of court. Thus, the second motion for new trial, the only one in which a factual
sufficiency challenge was raised, is a nullity and no error was preserved. Tex. R. Civ. P.
329b(b); see also Wirtz, 898 S.W.2d 414, 420 fn.2 (citing Dallas Storage & Warehouse Co.
v. Taylor, 124 Tex. 315, 77 S.W.2d 1031, 1034 (1934); Kalteyer v. Sneed, 837 S.W.2d 848,
851 (Tex. App.--Austin 1992, no writ)). Accordingly, Issues Number Ten and Eleven are
waived. 

B. Conditions Precedent

 In Issues Number One, Four and Five, LVWD alleges that several conditions
precedent under the contract were not complied with by ORC and this failure precludes
recovery by ORC. 

 In Issue Number One, LVWD asserts that a stipulation entered into by the parties and
the evidence established that there was no change to the contract price as a matter of law.

 In Issue Number Four, LVWD contends that ORC "is not entitled to payment for
additional work because of failure and/or nonperformance of conditions precedent to liability
for such payment."

 In Issue Number Five, LVWD argues that "[f]unding by TWDB was a condition
precedent to [ORC's] entitlement to payment. [ORC] was not entitled to payment for either
the amount paid less than the Contract Price or for any additional work because TWDB did
not provide funding for either." 

 Each issue essentially argues that the lack of additional funding of the project by
TWDB prevents liability of LVWD for a breach of the contract by LVWD.


 The parties entered into the following stipulation:

1. The Texas Water Development Board ("TWDB") has provided all the
funds it will provide for the Socorro EDAP Phase II West Interceptor, Lift
Station and Collectors Project ("Project").


2. The TWDB has paid all the amounts recommended by the Engineer on
the Project.


3. The TWDB will not approve any additional funding for the Project. 


4. The TWDB did not approve any change affecting the Project's
construction cost or any modification of the contract. 


LVWD argues that the effect of paragraph 4 of the stipulation is that the agreement and
approval by the TWDB to any change in the contract price, as required by paragraph 24 of
the Instructions to Bidders and paragraph 11.2 of the General Conditions, was not obtained.
LVWD argues that the plain language of these documents, absent an agreement and approval,
establishes there was no change in the contract price as a matter of law. The substance of
LVWD's argument is that because LVWD did not obtain approval from its funding source,
TWDB, and because LVWD did not approve any change orders to the contract, it is not liable
as a matter of law. This argument ignores the question regarding whether LVWD did not
obtain the approval it should have sought and whether it did not approve change orders
which it was obligated to approve, thereby creating liability for a breach of the contract.
Liability for a breach of the agreement and funding for the project are not necessarily
interrelated.


 ORC argues that funding by the TWDB is not a condition precedent to its recovery.
Article 23 in the Instructions to Bidders provides that "the execution of this contract is
contingent upon release of funds from the TWDB." ORC maintains that this sentence does
nothing more than alert bidders to the possibility that the contract may never be executed if
the TWDB does not approve funds. ORC argues that once the contract was executed, this
provision became moot.

 Moreover, ORC argues that the stipulation does nothing more than state the TWDB's
position regarding the funding for the project. ORC asserts that there is no evidence in the
record that the stipulation was ever published to or considered by the jury. ORC also argues
that the TWDB acknowledged in a letter to LVWD that it (TWDB) is required to pay LVWD
"for the actual costs of the completion of construction of the waste water collection system,"
and that "to the extent that the District can provide documentation of the costs . . . the Board
should be in a position to pay the District for such costs." Thus, ORC maintains that, the
TWDB may be obligated under the agreement with LVWD to fund all of the costs provided
for in the judgment. ORC contends that LVWD has never asked the TWDB for additional
funding because it (LVWD) believes it is not responsible for breach. Ultimately, the liability
of LVWD for a breach of the agreement may exist regardless of whether TWDB is
responsible for the additional funds needed to pay a judgment. The issue of funding of any
potential judgement is not before this Court nor relevant to the resolution of this appeal. 


 While the ability of LVWD to enter into a binding contract and issue a notice to
proceed under the original contract was conditioned upon approval of the funding of the
project by TWDB and the funding was a condition precedent to the ability of LVWD to issue
a notice to proceed, the initial funding is not related to breach of contract damages found by
the jury and owed by LVWD. As ORC has argued, TWDB may be obligated to pay some
or all of the damages owed but that is not before this Court. It is clear, however, that as a
matter of law, we do not interpret the stipulation filed by the parties to have created a
condition precedent such that liability is precluded from being assessed against LVWD. 

 Issue Number Four, in essence, contends that, in addition to the funding requirements
argued previously, ORC was obligated to show that it had substantially completed the
project, and, a waiver by LVWD of certain contractual requirements that serve as conditions
precedent to an increase in the contract price or authorization for payment for additional
work. LVWD argues that ORC was obligated to prove that written change orders had been
delivered to the engineer for the project, and that the claims were referred to TWDB and
approved for payment. This argument presents the illogical conclusion that LVWD is not
liable for the additional work performed by ORC because LVWD did not approve a change
order to pay for the work. LVWD overlooks the contention by ORC that the failure to
approve change orders for additional work is at the heart of ORC's claims for breach of
contract by LVWD. LVWD cannot argue a defense to liability by its own failures to process
paperwork under the contract. 

 The agreement established a change order procedure to be followed to assure that the
orderly and timely processing of claims presented by ORC to the owner, LVWD would
occur. The referral to TWDB and approval by that entity was a safeguard to LVWD and tied
to the funding of the project The evidence established that LVWD was the entity responsible
for processing, approving change orders and forwarding to LVWD for its approval requests
for changes to the agreement. The fact that it did not do so cannot become a condition
precedent to the filing of a claim for breach. The condition precedent asserted by LVWD
was its own responsibility not that of ORC. To argue in the alternative presents a contractor
with the insurmountable hurdle of being responsible for the conduct of the owner over which
it has no control. This is not the law in Texas. See e.g. Beard Family Partnership v.
Commercial Indemnity Ins. Co. 116 S.W.3d 839, *842 (Tex. App.--Austin, 2003 no writ);
Shintech Inc. v. Group Constructors, Inc., 688 S.W.2d 144 (Tex. App.--Houston [14th Dist.]
1985, no writ). Issues Number One, Four and Five are overruled. C. Damages

 LVWD has presented four issues that challenge the legal and factual sufficiency of
the evidence submitted to the jury. In Issue Number Six, LVWD argues that ORC's "proof
of damages does not meet the proof requirements for even those courts which have
considered the Modified Total Costs" method. In Issue Number Seven, LVWD argues that
"[n]o Texas case has recognized [the Modified Total Cost] method" and urges this Court to
reject the method. In Issues Number Eight and Nine, LVWD challenges the legal sufficiency
of the evidence to support the damages We read these issues together as a challenge to the
legal and factual sufficiency of the evidence.

 Appellant challenges the legal and factual sufficiency of the evidence to support the
jury's findings regarding the amount of damages suffered by ORC and the type of evidence
which was presented. As noted previously, Appellant has not complained of question three
where the jury found Appellant had "failed to comply" with its contract. ORC, as plaintiff,
had the burden of proof on each of these findings. In considering legal insufficiency points
of error the court will consider only the evidence tending to support the finding, viewing it
in the most favorable light in support of the finding, giving effect to all reasonable inferences
that may be drawn therefrom, and disregarding all conflicting evidence. If upon such review
the court finds there is a complete absence of evidence of probative force to support the
finding, or there exists only a scintilla of evidence to support it, the point must be sustained.
Shintech, 688 S.W.2d at 148; Glover v. Texas General Indemnity Co., 619 S.W.2d 400 (Tex.
1981); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). In considering factual
insufficiency points of error, the court examines the whole record to determine not only that
there is some evidence to support the finding, but also to determine whether considering all
the evidence, the finding is not manifestly unjust. If it is so weak that the finding is
manifestly unjust the court will sustain the point. Shintech, 688 S.W.2d at 148; Burnett v.
Motyka, 610 S.W.2d 735 (Tex. 1980); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660
(1952).

 As stated previously, LVWD did not properly preserve this issue for review because
of the procedural requirement of filing such a challenge in a motion for new trial. Never-the-less, we are persuaded that upon review of the record as a whole, there is sufficient evidence
to support an award of damages. Numerous witnesses testified regarding the damages
suffered by ORC as a result of the breach of the agreement by LVWD. The broad form
question which ultimately determined the damages award, did not identify the precise method
utilized by the jury for determining damages. Further, a review of the record, establishes that
evidence presented by ORC supported a finding that the actual vendor costs was in excess
of the 3,000,000 awarded and the equipment damages costs are in excess of 1,000,000. The
jury, as finders of fact, are free to evaluate the credibility of the witnesses and determine
whom to believe. Issues Number Six, Seven, Eight, and Nine are overruled.

 Having overruled all of Appellant's issues on review, we affirm the judgment of the
trial court. 

July 22, 2004

 

 


 __________________________________________

 RICHARD BARAJAS, Chief Justice




Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.


1. LVWD objected as follows: "Defendant also objects because there is no segregation on damages on the
breach of contract question by unit prices. The contract contains a particular method and manner for determining
potential damages for a claim and those need to be followed under the contract, which the Jury Charge does not
follow. Additionally, I might add for the Court that the contract actually in the claims provision contains a provision
specifically directed at unit prices and I'll discuss that with the jury in a few minutes."