BUTTRICK LUMBER COMPANY vs. MICHAEL P. COLLINS.

Middlesex.    January 12, 1909. — May 28, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Assignment.    Release.    Contract,* Performance and breach, Building contracts, Implied in law.    *Order.*

In an action on an order in writing payable to the plaintiff drawn upon the defendant by a contractor who was engaged in constructing a building on the defendant's land, it appeared that the order was payable from any amount due to the contractor on the final payment under his contract with the defendant, and that this order was accepted in writing by the defendant before the completion of the work under the contract.   There was evidence on which it could have been found that afterwards the contractor fully performed his contract, or that his work, although differing in some unimportant particulars from the specifications of the contract, was accepted by the defendant as a complete performance of it.   It further appeared that, when the building could have been found to have been completed and the time for the final payment had arrived, the defendant owed the contractor a sum of money more than sufficient to satisfy the plaintiff's order, and that thereupon the contractor and the defendant made a settlement, by which the contractor released the defendant from all liability to him, and accepted in return a payment of $100 and a promise of the defendant to assume and pay all bills of persons having liens upon the building. *Held,* that the case was for the jury, and that, upon the jury finding that the contractor had performed his contract and was entitled to a final payment more than sufficient to cover the amount of the plaintiff's order or assignment accepted by the defendant, the plaintiff was entitled to recover that amount in full, the subsequent release by the contractor, to which the plaintiff was not a party, having no effect to discharge or revoke the assignment of the fund to the plaintiff, and the defendant having no right, after his acceptance of the order, to reduce the amount coming to the plaintiff out of the final payment, by diverting the fund to the payment of liens which he had agreed to assume and discharge for his own benefit.

In an action against a landowner on an order in writing, drawn by a contractor and accepted by the defendant as payable "from any amount due" the contractor "on final payment" under a contract for the construction of a building, if it appears that the contractor in good faith has performed his contract in substance, and, although there have been some unessential variations from the letter of the contract, he would be entitled to recover from the landowner on a *quantum meruit* the value of his work and materials to an amount not exceeding the contract price reduced by the amount of damage suffered by the landowner on account of the contractor's departure from a strict performance, the plaintiff as the holder of the order can recover this amount.

CONTRACT upon an order in writing payable to the plaintiff drawn by one John G. Foster upon the defendant and accepted by him.   Writ dated March 28, 1904.

The order declared upon was as follows :

"Waltham, Mass., 8/8, 1903.

" Mr. M. P. Collins,

"Dear Sir :

"Please reserve and pay the Buttrick Lumber Co. one thousand ($1000) dollars and deduct the same from any amount due me on final payment.

"John G. Foster."

"Accepted, — M. P. Collins,
      By Geo. E. Strout, Archt."

In the Superior Court the case was tried before *Bond*, J. The contract to which the order related began as follows:

"Building contract, made this seventeenth day of February one thousand nine hundred and three, by and between M. P. Collins of Waltham, Mass., and John G. Foster of Waltham, Mass., builder.

"The said John G. Foster agrees with the said M. P. Collins to make, erect, build and finish in a good, substantial and workmanlike manner, a 3-store and apartment brick faced building upon lot situated at the corner of Main and Lexington Streets, Waltham, Mass., said building to be built of good and substantial material and in accordance with the drafts, plans, explanations or specifications furnished or to be furnished to said John G. Foster by Geo. E. Strout, Architect, and to be finished complete on or before the fifteenth day of June, 1903.

"And the said M. P. Collins agrees to pay for the same to the said John G. Foster the sum of six thousand and fifty dollars, as follows :

1st   $1200 when outside walls are up and roof covered.

2nd   $1150 when building is plastered, cellar cemented and windows in.

3rd   $1000 when stores are finished and building finished outside.

4th   $1200 when building is completed.

5th   $1500, 31 days after building is completed.

"Security against mechanics' or other liens is to be furnished by said John Foster prior to fifth payment."

Foster was called by the plaintiff as a witness, and the substance of his testimony is described in the opinion.

The order sued upon was made and accepted on August 8, 1903. Foster testified that he began work under the contract in

February, 1903, and that he completed the construction of the building in September, 1903.

Foster also testified that he made a settlement with the defendant on October 12, 1903, and at that time signed a release, which was put in evidence by the plaintiff. It was dated October 12, 1903, and was a release in full of all claims which Foster had against Collins.

He further testified, " The consideration of my signing the release was that he [Collins] should pay all bills then having a hold on the building. . . . At that time there was $2,200 due me. There was a balance of $700 on the fourth payment, and a final payment of $1,500. That final payment was due according to the contract thirty-one days after, and I finished about September 11. So on October 12 there was $2,200 due me from Mr. Collins. I did not get any money when I signed the release. I understood he was to pay the bills that had a hold on the building. I don't know what time the owner moved into the building, but I think it was before October 12."

At the close of the evidence, the defendant asked the judge for seventeen rulings and instructions to the jury. Of these the judge gave the eighth, fifteenth, sixteenth and seventeenth as follows:

" 8. The order upon which this action is brought was a conditional order, payable only out of the final payment when it should become due according to the terms of the contract."

" 15. The fact that the defendant made payments from time to time to Foster under the contract, does not constitute a waiver of his right to have Foster complete the contract according to the plans and specifications.

" 16. The fact that the defendant entered into possession and occupied the building, after Foster had refused to do any further work upon it, does not amount to an acceptance of the building, or a waiver of his right to have the contract fully performed.

" 17. The burden of proof is upon the plaintiff to show that the final payment became due to Foster."

The remaining rulings and instructions requested by the defendant, which the judge refused to give, were as follows:

" 1. Upon all the evidence the plaintiff is not entitled to maintain this action.

" 2. By the terms of the contract between the defendant and

Foster, the final payment did not become due so long as there were valid claims entitled to be maintained as liens upon the building, for which Foster gave no security.

"3. There is no evidence which would warrant the jury in finding that the agreement between Foster and the defendant which resulted in the release executed by Foster Oct. 12, 1903, operated to make the final payment due to Foster according to the terms of the order.

"4. If the defendant, on October 12, 1903, in consideration of the release then executed by Foster, agreed to pay him $100 and to pay all valid liens upon the building, that agreement did not amount to a waiver of the defendant's rights to refuse payment of the order upon the ground that the final payment never became due according to the terms of the contract.

"5. In the absence of fraud or collusion for the purpose of defeating the plaintiff's claim, the defendant had a right to enter into a new agreement with Foster on Oct. 12, 1903, by which he agreed to pay Foster $100 and pay all valid outstanding liens upon the building, in consideration of the execution of the release by Foster of all further claims upon him, even though such agreement would operate to defeat the plaintiff's claim upon the order.

"6. The acceptance of the plaintiff's order by the defendant would not deprive the defendant and Foster of the right to modify their contract in such way as they might deem best, in the absence of fraud or collusion between them to defeat the plaintiff's claim.

"7. If on October 12, 1903, there was a *bona fide* difference of opinion between the defendant and Foster as to whether the building had been completed according to the plans and specifications, and if they then compromised their differences by entering into a new agreement whereby Foster released the defendant from all further liability to him in consideration of the defendant's promise to pay him $100 and to assume and pay all valid outstanding liens upon the building, such compromise agreement violated no rights of the plaintiff in any such way as to entitle it to maintain this action upon the order."

"9. This action was prematurely brought.

"10. The final payment upon the contract between the de-

fendant and Foster could not be regarded as due, so long as there were valid outstanding liens in favor of McKenna and John W. Foster.   [John W. Foster was the father of John G. Foster who had done work on the building.]

"11. If the defendant accepted the order in suit payable out of the final payment when due on the contract, and afterwards accepted the order of another sub-contractor, which was paid out of money coming due Foster upon prior payments either under the contract or for extras, which money if not so paid might have been applied to the payment of liens upon the building, the plaintiff cannot for that reason disregard the amount of such lien, and recover the amount of his order as if such liens had been paid out of such prior payments.

"12. Foster had a right to have money coming due him on account of prior payments under the contract or for extras, paid or applied as he saw fit, notwithstanding the fact that the plaintiff had an order payable out of the final payment, even though the result might be that the plaintiff's order would be defeated because of the defendant's right to retain out of the final payment enough to satisfy all valid liens upon the building.

"13. The defendant is entitled to be allowed out of the final payment all sums that may be necessary to extinguish liens upon the building which cannot be extinguished out of other funds of Foster in his hands, and the plaintiff can at best recover no more than the balance of such final payment remaining after such liens are extinguished.

"14. If Foster. failed to complete the building according to the contract, the plaintiff cannot recover."

The judge refused to make or give any of these rulings and instructions, and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $1,115.50.   The defendant alleged exceptions to the refusals of the judge to rule as requested. " The defendant also excepted to that portion of the charge in which the judge charged the jury that if Foster in good faith thought he had performed the contract and for that reason might be entitled to pay for his work with deductions for the cost of rectifying the deficiencies in the matters in which he failed to complete his contract that then he would become entitled to the final payment, or some portion of it, under the contract, within

the meaning of this order. The defendant stated at the time of taking this last exception and as a reason for taking it, that he thought the rule there announced by the judge was a rule under which the plaintiff recovered, not on the contract, but on a *quantum meruit.*"

*G. L. Mayberry*, for the defendant.

*W. J. Barry*, for the plaintiff.

BRALEY, J. The order and its acceptance, while improperly declared on as an inland bill of exchange, has been treated throughout by the parties and the trial judge as the written promise of the defendant to pay the amount named to the plaintiff from the final payment due to the drawer under a building contract in process of performance. *Wells* v. *Brigham*, 6 Cush. 6. R. L. c. 73, §§ 143, 146. But, no question of pleading having been raised, we consider the case as presented.

If the acceptance of the order in the name of the defendant by the architect was unauthorized, there was ample evidence of ratification for the consideration of the jury, to whom this question was rightly submitted. *Lawrence* v. *Lewis*, 133 Mass. 561.

The validity of the defendant's signature being established, acceptance had been proved, and, subject to the provisions of the contract, the accepted order operated as an assignment for the plaintiff's benefit of so much of the final payment as might be necessary to satisfy the amount for which it was drawn. By the assignment and the promise of the defendant, his liability to Foster, the original debtor, was discharged for the amount, and this furnished a sufficient consideration for the promise. *Burrows* v. *Glover*, 106 Mass. 324, 325. *Griffin* v. *Cunningham*, 183 Mass. 505.

But, although the plaintiff could sue in its own name, it was required to show a compliance with the precedent conditions upon which the final payment depended, as the assignor, with whose remedial rights the plaintiff is clothed, could not recover under the contract, without proof that it had been performed. *Gillis* v. *Cobe*, 177 Mass. 584. *Allen* v. *Mayers*, 184 Mass. 486. *Burke* v. *Coyne*, 188 Mass. 401. *Corsiglia* v. *Burnham*, 189 Mass. 347. Upon this question the evidence was conflicting. The erection of the building was under the supervision of an architect by whom earlier payments had been approved, and who could

have been found to have been fully conversant with all of the details of construction as the work progressed. If the contractor whom the plaintiff called as a witness was believed, the jury could find that neither the defendant, who lived next door and was familiar with the general character of the work, nor the architect, during the six months in which the building was under construction, made any objection to the quality of the materials used or the character of the work until it had been substantially finished and the defendant had entered into occupation. A list then was furnished, containing twenty-six particulars in which the architect said that the work did not conform to the specifications. In his evidence the witness, while asserting that in every particular he had performed the contract, took up these items separately and gave a full explanation as to each and said that, after a full examination of all the matters complained of, he had completed them as requested, except that he had refused to change the " store fronts," which he insisted were finished properly. He also said that he made every reasonable effort to perform the contract, and believed that there had been a full compliance with the specifications. In the specifications " all doors and windows in stores " were to be finished on the interior with moulded casings. These were put on, and, even ·if the defendant maintained that the mouldings should have been plain because they were so shown by a detailed drawing supplied by the architect, there is no clause in the contract providing that such drawings shall control the specifications, with which the contractor had complied. It was not until the trial that the defendant further said that the front wall was not plumb within an inch or half an inch, and this the plaintiff conceded. But upon this matter the contractor further testified, that the wall could not be plumb because it was built to conform with the front wall of the defendant's adjoining building with which it fully corresponded.

While acceptance may be express, or implied from the conduct of the owner or his agent, yet mere occupancy, or part payment, and nothing further, unless the contract so provides, do not of themselves warrant an inference of the acceptance of work, where defects are complained of, but they may be considered in connection with other facts, where satisfactory per-

formance of a building contract is in issue.   The question is one of fact. It was open for the jury to say upon all the evidence, that all of the various details of defective workmanship set forth in the notice had been remedied wherever there had been a departure from the specifications, and, from the conduct of the architect and the defendant in remaining silent when they could have been found to have known of it, coupled with the fact that the front wall of the new building was apparently intended to correspond with the defendant's adjoining estate, that as finally finished the building had been accepted as having been fully completed.  *Gray* v. *James,* 128 Mass. 110.   *Beharrell* v. *Quimby,* 162 Mass. 571.   *Gillis* v. *Cobe,* 177 Mass. 584.

It is true that both the architect and the defendant gave evidence of a failure of performance in important matters which had not been remedied.   The jury, however, were not required to accept their testimony and to reject that of the contractor, and, if they found that the contract had been performed, the last instalment of the contract price had been earned.   *Olmstead* v. *Beale,* 19 Pick. 528.   *Wiley* v. *Athol,* 150 Mass. 426, 435. *Allen* v. *Mayers,* 184 Mass. 486.   But, if earned, it was not payable.if there were outstanding mechanic's liens at the date of the plaintiff's writ, for which security must be given as called for by the contract.   That such liens were in existence the plaintiff admitted, but upon uncontroverted evidence, the effect of which was left to the jury under suitable instructions, it could have been found that the defendant on October 12, 1903, had obtained from Foster a release of all claims and demands, the actual consideration for which besides the receipt of $100 in money included the payment by the defendant of the liens.   By this transaction the release operated as a satisfaction of the performance of this condition, even if the amount paid to the releasor was only a very small part of what he claimed to be coming to him.   But, the release to which it was not a party did not discharge or revoke the plaintiff's assignment of the fund, and the defendant could not use the plaintiff's money in payment of liens, which he himself had agreed to assume and discharge for his own benefit by way of a settlement with the builder.   There had been no abandonment or cancellation of the contract as in *Linnehan* v. *Matthews,* 149 Mass. 29, and in *Glidden* v. *Massachusetts Hos-*

*pital Life Ins. Co.* 187 Mass. 538, but only a settlement with Foster who was claiming under it as having been fully performed. The defendant, having accepted the order, could not reduce the amount coming to the plaintiff out of the final payment by charging against it directly or indirectly orders afterwards accepted or the money paid for the release. The order, followed by acceptance, was for part of a particular fund, and bound the fund in the defendant's hands as against the subsequent claims of attaching or other creditors of Foster. *Dennis* v. *Twitchell,* 10 Met. 180. *Kingman* v. *Perkins,* 105 Mass. 111. *Hall* v. *Dorchester Ins. Co.* 111 Mass. 53. *St. John* v. *Charles,* 105 Mass. 262. *Burrows* v. *Glover,* 106 Mass. 324. *Brill* v. *Tuttle,* 81 N. Y. 454, 457. *Walker* v. *Rostron,* 9 M. & W. 411. Besides, as between themselves, Foster and the defendant, so long as the contract remained in force, could not by anticipation reduce the final payment below the plaintiff's interest through over payments of preceding instalments. *Eastman* v. *Wright,* 6 Pick. 316, 322. *Sanders* v. *Soutter,* 136 N. Y. 97. *Todd* v. *Meding,* 11 Dick. 83. If these orders, the amount of the liens at their face value and the payment for the release were not taken out, there was no dispute but there would be more than enough remaining of the final payment to satisfy the plaintiff's demand.

But, while the defendant's requests so far as they were not given were properly refused, in instructing the jury upon the question raised by the fourteenth request, after having said that there could be no recovery unless the contract was performed according to its terms or the defendant had accepted the building as it stood, the judge went further, and said, that, if in good faith there had been a substantial performance, the plaintiff could recover the balance due to the amount of the assignment, less any trifling deductions required to complete the work. The defendant, having pleaded the contract, was protected by its terms by which the plaintiff also became bound. If there had been some immaterial variations so that recovery under the strict letter of the contract could not be had, yet the contract had not been abrogated; and the measure of the defendant's liability for labor and materials under the rule in *Hayward* v. *Leonard,* 7 Pick. 181, continued to be the contract price. *Blood* v. *Wilson,* 141 Mass. 25. *Burke* v. *Coyne,* 188 Mass. 401.

The accepted order, as we have said, was a partial and effective appropriation of a recognized debt or fund, namely, the amount which might be found finally due to Foster, and the plaintiff's right of priority still attached whatever the form of procedure. *Bourne* v. *Cabot*, 3 Met. 305. *Kendall* v. *United States*, 7 Wall. 113.

The defendant's exceptions to the charge therefore were not well taken, and, there having been no error of law at the trial, the order must be,

*Exceptions overruled.*