**BEARD FAMILY PARTNERSHIP, Appellant,**

v.

**COMMERCIAL INDEMNITY INSURANCE COMPANY, Appellee.**

No. 03–01–00443–CV.

Court of Appeals of Texas, Austin.

Aug. 29, 2003.

William W. Rittenhouse, William W. Rittenhouse, P.C., Austin, for appellant.

G. Stewart Whitehead, Karen G. Gantt, Winstead, Sechrest & Minick, P.C., Austin, for appellee.

Before Justices KIDD, PATTERSON and PURYEAR.

## OPINION

Opinion by Justice PATTERSON.

This case involves a surety's rights and obligations under payment and performance bonds entered into pursuant to a construction contract. Appellee Commercial Indemnity Insurance Company ("Commercial Indemnity"), the surety, sued appellant Beard Family Partnership ("Beard"), the owner of land to be developed as a subdivision, for breach of contract and attorneys' fees based on Beard's failure to pay Commercial Indemnity the contract balance for the completed construction of a residential subdivision's infrastructure after the contractor defaulted. Following a jury trial, the jury specifically found that both parties failed to comply with the underlying construction contract, but that Commercial Indemnity substantially performed the contract. The jury awarded damages and reasonable attorneys' fees to Commercial Indemnity. Based on the jury's damages finding of $155,733.51, the court rendered judgment in favor of Commercial Indemnity, adding prejudgment interest in the amount of $43,571.25, attorneys' fees in the amount of $57,642.62, and a conditional award for attorneys' fees on appeal.

In ten issues Beard appeals, arguing that (i) the jury's findings are based on no evidence or insufficient evidence; (ii) Commercial Indemnity failed to comply with conditions precedent that precluded its recovery; (iii) the court erred in awarding attorneys' fees because Commercial Indemnity's expert witness was untimely disclosed; and (iv) the court erred in excluding Beard's evidence regarding its damages and settlement offer. Finding these grounds without merit, and addressing the arguments raised by the parties in their briefs and at oral argument, we affirm the judgment of the trial court.

## FACTUAL BACKGROUND

Beard owned land in Austin, which was subdivided to be developed for residences. On February 6, 1995, Beard and Round Rock Construction entered into a contract for the construction of the subdivision's infrastructure, which included the streets, water, and wastewater and drainage facilities. Beard agreed to pay Round Rock $504,930.50 for the contractor's perform-

ance. The parties agreed in the contract that the work would be completed in 150 days and that liquidated damages would be $500 per day after 150 days.

The contract also provided for Round Rock to furnish performance and payment bonds to guarantee faithful performance of the job and payment of obligations arising under the contract. Commercial Indemnity issued performance and payment bonds to Round Rock pursuant to the contract. Under the performance bond, Commercial Indemnity guaranteed that if Round Rock failed to perform the contract, Commercial Indemnity would remedy the default. Under the payment bond, Commercial Indemnity guaranteed that if Round Rock failed to pay its suppliers of labor and materials furnished under the construction project, Commercial Indemnity would "promptly and faithfully pay claimants."

Round Rock began its work on the job during the first week of March 1995. The parties immediately discovered inconsistencies between the record drawings, also known as the "plans," and the topography of the field. Beard's engineer, Freddie Dippel, Jr. of the Cunningham–Allen engineering firm, met with Round Rock on March 16 to discuss the problems with the plans. Dippel acknowledged at trial that something was wrong "with regard to how natural ground was perceived in this set of plans." The elevations on the original plan were miscalculated by six to eight vertical feet. Dippel corrected the plans, adjusted the elevations according to the actual topography of the area, submitted the new plans for approval by the City on April 5, and received approval from the City on May 18. Pursuant to the adjusted plans, Round Rock regraded the project.

The change in the elevations on the original plans led to changes in other aspects of the job. On July 18, 1995, Round Rock agreed to a change order to install "dry" utilities in the subdivision. Although Cunningham–Allen had designed the infrastructure of the subdivision and received approval of the plans from the City in 1991, the plans had not included the "dry utilities," such as electricity, gas, telephone, and television cable. The City drafted the dry utilities plans after Cunningham–Allen presented its plans to the City. An additional sum of $29,450 was agreed upon to install underground electric lines, work that included excavation, backfill, conduit installation, pullboxes, and transformer pads. Because of the elevation changes to the original plans, the dry utilities plans did not mesh with the original plans.

Shortly thereafter, in late summer, John Schuler, Commercial Indemnity's president, learned that Round Rock was having problems meeting its payroll. When the job was close to completion in October 1995, Round Rock went out of business, defaulting on payment to numerous subcontractors and suppliers. At that time, Round Rock had submitted and Beard had paid on six applications for payments totaling over $400,000. Beard then made a claim on the performance bond. Commercial Indemnity took over the job, exercising its option under the performance bond to complete the contract by hiring a replacement contractor, Coleman Construction Company, to finish the work. Coleman hired many of Round Rock's employees. After Commercial Indemnity took over the job, unpaid subcontractors filed several liens. At trial, Schuler testified that all claims and liens were paid in October and November 1995.

In December 1995, Beard began selling lots to homebuilders. In mid-January 1996, the subdivision's streets were paved. Commercial Indemnity submitted applications for payment for the amount remaining on the contract, as well as for other

work performed. An unpaid balance of $155,733.51 remained. By application dated December 13, 1995 ("Application No. 7"), Commercial Indemnity applied for payment in the amount of $30,391.20. By application dated March 20, 1996 ("Application No. 8"), Commercial Indemnity applied for payment in the amount of $125,342.91. Although Coleman finished the job and Dippel approved the applications for payment on March 22, 1996, Beard did not pay the amounts requested. The parties disagreed about when the construction was "substantially complete" as required by the contract: Commercial Indemnity contended that the project was substantially complete in December when Beard began selling the lots; Beard contended the job was at least 202 days late. Beard refused to pay the amount Commercial Indemnity claimed without some deduction for the delay and receipt of an all-bills-paid affidavit, which Beard requested and Commercial Indemnity failed to provide.

Commercial Indemnity then filed suit against Beard, seeking the unpaid balance of the contract in the amount of $155,733.51, plus additional damages in the amount of $60,000 for installation of the telephone and television cable outside the scope of the contract and upon Beard's request. Commercial Indemnity also sought attorneys' fees. In its defense, Beard contended that (i) Coleman finished the work 202 days beyond the 150–day period provided in the contract for completion of the project and that Commercial Indemnity was therefore responsible for the delay, and (ii) Commercial Indemnity failed to submit an all-bills-paid affidavit.

## ANALYSIS

### Substantial Performance

The jury expressly found that Commercial Indemnity substantially performed the construction contract and awarded contract damages in the amount of $155,733.51. It also found that Beard failed to comply with the construction contract. In its first and fourth issues, Beard asserts that, by Commercial Indemnity's failure to submit an all-bills-paid affidavit upon Beard's request, Commercial Indemnity failed to meet a condition precedent to being paid the balance under the contract. In these issues, Beard asks us to interpret the contract in question, which neither party asserts is ambiguous. The interpretation of an unambiguous contract is a question of law, to which we apply a *de novo* standard of review. *MCI Telecomms. Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647, 650 (Tex.1999); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983).

A condition precedent that affects a party's obligation to perform is an act or event that must occur after the making of a contract before a right to immediate performance arises and before there may be a breach of contractual duty. *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex.1992); *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976). Ordinarily, if the acceptance of a contract is conditioned upon the happening of a future event, the condition must be performed or fulfilled exactly as set forth in the contract before the promise can be enforced. *See Centex*, 840 S.W.2d at 956.

Beard thus argues that the contract creates a condition precedent requiring Commercial Indemnity to fulfill all terms and conditions of the underlying contract between Beard and Round Rock, including the provision of an all-bills-paid affidavit. The contract between Beard as Owner and Round Rock as Contractor provided:

¶ 9.10 **FINAL COMPLETION AND FINAL PAYMENT**

¶ 9.10.1. . . . The architect's final Certificate for Payment will constitute a further representation that conditions listed in subparagraph 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled.

¶ 9.10.2 Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner . . . might be responsible . . . have been paid or otherwise satisfied. . . .

Beard also urges that an all-bills-paid affidavit is required by section 53.085 of the Texas Property Code, which provides:

(a) Any person who furnishes labor or materials for the construction of improvements on real property shall, if requested and as a condition of payment for such labor or materials, provide . . . an affidavit stating that the person has paid each of the person's subcontractors, laborers, or materialmen in full. . . .

Tex. Prop.Code Ann. § 53.085(a) (West Supp.2003). Because Beard requested the affidavit and Commercial Indemnity did not provide it, Beard contends it is not liable for the retained contract balance.

■ The issues in this case involve more than the construction contract between Beard as owner and Round Rock as Contractor. When Commercial Indemnity stepped in as surety after Round Rock defaulted, the terms of the performance bond and the payment bond came into play as well. It is true that Commercial Indemnity as a surety "stands in the shoes" of its principal, here Round Rock, in the event of default by Round Rock either in performance of the construction contract—

the performance bond—or in the failure to pay its subcontractors or suppliers—the payment bond. Suretyship is a tripartite relationship in which the obligation of the surety is intended to supplement an obligation of the principal (also described as the debtor or obligor) owed to the creditor (also described as the obligee). *Restatement (First) of Security* § 82 (1941). Thus, two parties are liable for a debt, although one—here Commercial Indemnity—owes the other the duty of ultimate payment.

With the performance bond, the surety is liable for a default in the performance by the principal of its contract obligations. Here, the performance bond provides:

Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's obligations thereunder, the Surety *may promptly remedy the default or* may promptly

(1) Complete the contract in accordance with its terms and conditions, or may

(2) Obtain a bid or bids for completing the contract in accordance with its terms and conditions. . . .

(Emphasis added.) Commercial Indemnity elected to remedy the default by hiring a replacement contractor and completing the job. As contemplated by the bond, Commercial Indemnity advanced funds to complete Round Rock's contract when it defaulted on the performance it owed Beard.

By the terms of the payment bond, on the other hand, Commercial Indemnity agreed to "promptly and faithfully pay claimants for all labor, subcontracts, materials . . . performed or furnished under or by virtue of said contract. . . ." Thus, the very purpose of the payment bond is to protect the owner-obligee as against subcontractors, suppliers, and those providing

labor under a construction contract. One commentator describes the role of payment bonds as follows:

> The condition of a payment bond is typically that the principal [the entity providing the bond] will promptly pay persons who furnish labor and material for the use in the performance of the contract work. On a private project, of course, the obligee wants to be sure that these persons are paid because they can file mechanic's/construction liens against the owner's property. *The payment bond assures that a financially responsible party, the surety, is committed to paying these lien claimants should the principal fail to do so.*

Payment Bond Manual 3 (Edward G. Gallagher ed., 2d ed.1995) (emphasis added). Lien claimants thus have recourse as against the surety. *Id.*

Because they are contracts, performance and payment bonds are construed to effectuate the parties' intentions. When the provisions are clear and unambiguous, a court must enforce the terms of the bond as written. The intent of the parties to a surety bond as well as their rights and obligations are determined by the language of the bond itself. *Geters v. Eagle Ins. Co.,* 834 S.W.2d 49, 50 (Tex. 1992). Although the performance and payment bonds at issue incorporate the terms and conditions of the construction contract, any conflicting clauses must be harmonized to reflect the intent of the parties. *See Ogden v. Dickinson State Bank,* 662 S.W.2d 330, 332 (Tex.1983).

When we read together and harmonize the underlying contract's provision regarding the requirement of an all-bills-paid affidavit from the contractor, together with the bonds, the intent of the parties makes clear that the affidavit is not a requirement also imposed upon the surety. In addition to the affidavit, paragraph 9.10.2 also requires the "consent of surety, if any, to final payment." Because the surety is the assurance of payment—and continues to be liable on the bond until the expiration of a specified time period—the affidavit would under these circumstances perform no function.

At trial, for example, Beard introduced as evidence a letter from Commercial Indemnity listing several outstanding claims, including one the surety did not intend to pay because it was filed late and one that was disputed. The jury heard testimony that a surety owes obligations to both its principal and the obligee and is not free to honor just any claim presented to it for payment by either an obligee or a payment bond claimant. Rather, as Schuler testified at trial, after a contractor defaults, it is a difficult process to verify whether work has been performed and a claim is valid. A claim may or may not be valid and the surety must reasonably investigate its validity. The performance bond obligation then is secondary to the obligation the principal owes to the obligee, which is discharged by the presentation of the all-bills-paid affidavit. Thus, for the surety to have an obligation to act pursuant to its performance bond, the principal first must have failed to fulfill its obligations. A surety is then vested with broad discretion to resolve the claims.

The performance bond also requires as a condition precedent that the Owner perform its obligations before the surety is required to perform under the bond. By the terms of the performance bond, the surety's obligation arises only when the "Contractor [is] ... declared by Owner to be in default under the Contract, the Owner having performed Owner's obligations thereunder." Because the jury found that Beard failed to perform and that Commercial Indemnity substantially performed the underlying contract, Beard

is not excused from performance. We overrule Beard's first and fourth issues.

### Legal and Factual Sufficiency

In its second, third, and seventh issues, Beard argues that the jury's finding that Beard failed to comply with the contract and the consequent damage findings are supported by no evidence or insufficient evidence. The jury found that Beard defaulted under the contract and, by finding breach and awarding the retainage amounts under the contract, impliedly charged Beard with responsibility for delay on the construction project. We have reviewed the record and find ample evidence to support the jury's findings.

We will first address the standards of review for challenges to legal and factual sufficiency. To preserve error on factual insufficiency of the jury's verdict, a motion for new trial is required. Tex.R. Civ. P. 324(b)(2); *Fredonia State Bank v. General Am. Life Ins. Co.*, 881 S.W.2d 279, 281 (Tex.1994). A motion for new trial must clearly state the grounds so that the objection may be clearly identified and understood by the court. Tex.R. Civ. P. 322. Following trial, Beard moved for a new trial. The motion states that "Beard here moves for a new trial," but does not state any grounds for the motion and is therefore inadequate to preserve error. *Gulf Coast State Bank v. Emenhiser*, 562 S.W.2d 449, 452 (Tex.1978).

Challenges to the legal sufficiency of the evidence must be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence established conclusively the opposite of a vital fact. *See Merrell*

*Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). In reviewing legal sufficiency, we are required to determine whether the proffered evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *See Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994).

If a party is attacking the legal sufficiency of an adverse finding of an issue on which it did not have the burden of proof, the attacking party must demonstrate on appeal that there is no evidence to support the adverse finding. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). In reviewing a no-evidence issue, we are to consider only the evidence favoring the finding, disregarding all direct and circumstantial evidence to the contrary. *Lenz v. Lenz*, 79 S.W.3d 10, 13 (Tex.2002); *Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996).

 Delay caused by an owner on a construction project is a breach of contract. *Board of Regents v. S & G Constr. Co.*, 529 S.W.2d 90, 100 (Tex.Civ.App.-Austin 1975, writ ref'd n.r.e.). An owner impliedly warrants the adequacy of the plans it supplies and which it requires its contractor to follow. *See United States v. Spearin*, 248 U.S. 132, 136, 54 Ct.Cl. 187, 39 S.Ct. 59, 63 L.Ed. 166 (1918). An owner breaches its construction contract with its contractor when the inadequacies of the owner's plans, obtained through the owner's retained engineer, cause delay in the completion of the work. *See id.*

 Here, the jury heard evidence relating to various sources of delay in the project: (i) at the inception of work, because of miscalculations in the elevations of the actual topography, the engineer was required to adjust the plans and resubmit them to the City for approval; (ii) a con-

tract change order for the installation of dry utilities occurred in mid-July as a consequence of the elevation adjustment in the original plans and the failure of the two separate plans to "mesh"; (iii) a detention pond was found to be encroaching onto a homeowner's property according to the original plans and was required to be redesigned; and (iv) because of the passage of time and change in regulations since the original drawings had been prepared, dirt and rock known as "spoils" had to be removed from the construction site rather than added to the lots. Rick Coleman of Coleman Construction testified that the plans were simply insufficient and contained too many mistakes. As to the miscalculation of elevation, Coleman testified that once Beard's engineer raised the grade, "it changed everything downstream." Although Beard disputed that it was responsible for the various delays, the jury found otherwise and there is abundant evidence to support its findings. We overrule Beard's second and third issues.

As its seventh issue, Beard asserts that the jury's finding of zero damages for Beard was legally and factually insufficient. Under Beard's theory, because Commercial Indemnity did not prove that Beard was responsible for one hundred percent of the delay, there is insufficient evidence not to award Beard damages.

■■■ When a party attacks the legal sufficiency of a finding on which it has the burden of proof, it must demonstrate that all the evidence establishes, as a matter of law, all vital facts in support of the finding. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001). After reviewing the record, if we find any evidence that supports the finding, ignoring all evidence to the contrary, the finding must be upheld. *Id.* (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989)). If there is no evidence to support the jury's finding, then the entire record must be examined to see if the contrary proposition is established as a matter of law. *Id.* If the contrary proposition is established conclusively by the evidence, the issue will be sustained. *Id.* (citing *Croucher*, 660 S.W.2d at 58).

■■■ Question 11 of the charge asked the jury what sum of money would fairly and reasonably compensate Beard for Commercial Indemnity's failure to comply with the construction contract. In arriving at a sum, the jury could only consider the liquidated damages clause of the construction contract, which provided for liquidated damages of $500 per day for each day of delay after 150 calendar days. As discussed above, there is ample evidence to support the jury's findings that Beard caused delay in construction. This evidence further supports the jury's finding of zero damages for Beard. Accordingly, we overrule Beard's seventh issue.

### Evidentiary Rulings

Beard complains in its eighth issue that the district court improperly excluded evidence of Beard's actual damages. We apply an abuse of discretion standard to the question of whether a district court erred in an evidentiary ruling. *National Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527–28 (Tex.2000); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex.1995). We may reverse a district court under this standard only when we find that "the court acted in an unreasonable or arbitrary manner," *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991), or "without regard for any guiding rules or principles." *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex.1998) (quoting *Alvarado*, 897 S.W.2d at 754).

■■■ When seeking to reverse a judgment based on an improper evidentiary ruling, a complaining party "need not

prove that but for the error a different judgment would necessarily have been rendered, but only that the error probably resulted in an improper judgment." *Alvarado,* 897 S.W.2d at 753; *accord Malone,* 972 S.W.2d at 43. To prevail, the party must demonstrate that "the judgment turns on the particular evidence excluded or admitted." *Alvarado,* 897 S.W.2d at 753–54. We review the entire record to determine whether a party has met this burden. *Id.* at 754. If any legitimate basis exists to support a district court's evidentiary ruling, then we must uphold the court's decision. *Malone,* 972 S.W.2d at 43; *State Bar v. Evans,* 774 S.W.2d 656, 658 n. 5 (Tex.1989) (citing *McCormick on Evidence* § 52, at 131 (3d ed.1984)).

The contract had a liquidated damages clause of $500 per day. Jim Beard testified that the company suffered damages of $1000 per day. Because the parties stipulated that the liquidated damages provision was enforceable (although this represented a change in Commercial Indemnity's position when it amended its discovery responses shortly before trial), the district court excluded testimony concerning actual damages. But Beard has cited no authority in support of its position. Tex.R.App. P. 38.1(h) (brief must contain appropriate citations to authority). We cannot say that the district court abused its discretion when it excluded Beard's actual damages evidence. We overrule Beard's eighth issue.

Likewise, Beard urges in its ninth issue that the district court erroneously admitted evidence "over objection" that Commercial Indemnity incurred more damages than the amount it sought to recover under the contract. Beard complains that Commercial Indemnity argued in its opening statement that it paid more money than it made on the project and that Schuler did additional work "out of the goodness of his heart." It further complains that Schuler testified that Commercial Indemnity did additional work without submitting a bill.

Beard's only objection to this evidence was in the form of its motion in limine, which the district court partially granted. It is well established that a motion in limine is in itself insufficient to preserve error. *Hartford Accident & Indem. Co. v. McCardell,* 369 S.W.2d 331, 335 (Tex.1963). To preserve error on this issue, Beard must have objected when the evidence was offered and obtained a ruling on its objection. *Id.; see also* Tex.R.App. P. 33.1(a). This Beard failed to do, thus waiving error. Therefore, we overrule Beard's ninth issue.

In its tenth issue, Beard contends that the district court erroneously excluded evidence of its settlement offer to pay $84,733.51 and add sixty days to the completion deadline to compensate for the extra time required by the change order. Offers of settlement are "not admissible to prove liability for or invalidity of the claim or its amount." Tex.R. Evid. 408. Settlement offers may be admitted for another purpose, however, such as proving bias or prejudice or negating a contention of undue delay. *Id.* Here, Beard sought to introduce its settlement offer to disprove the validity and amount of Commercial Indemnity's claim. We hold that the district court did not abuse its discretion in excluding evidence of Beard's settlement offer. We overrule Beard's tenth issue.

### *Attorneys' Fees*

In its fifth issue, Beard complains that Commercial Indemnity's expert witness on attorneys' fees was not timely designated and therefore should have been excluded. Commercial Indemnity responds that it designated its expert thirty days before trial. Beard sought exclusion

of the attorneys' fees testimony through a motion in limine.

Commercial Indemnity admits that it failed to designate its expert witnesses within the time period required by rule of civil procedure 195.2. Tex.R. Civ. P. 195.2 (deadline of ninety days before trial for party seeking affirmative relief). When a party fails to supplement a discovery response in a timely manner, the evidence may be excluded. *Id.* 193.6(a); *see also Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex.1992). The remedy is mandatory and automatic unless the court finds that there was good cause for the failure to amend or supplement, or the failure will not unfairly surprise or prejudice the other party. Tex.R. Civ. P. 193.6(a); *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 297–98 (Tex.1986). The burden of establishing good cause or lack of unfair surprise is on the party seeking to introduce the evidence. Tex.R. Civ. P. 193.6(b). The trial court has discretion to determine whether the offering party has met its burden of showing good cause. *Aluminum Co. of Am. v. Bullock*, 870 S.W.2d 2, 3 (Tex.1994). The record must support a finding of good cause or lack of unfair surprise. Tex.R. Civ. P. 193.6(b).

After extensive argument and briefing and offering Beard a postponement of testimony to allow Beard to depose the attorneys' fee expert, the district court ruled that there was good cause to allow the attorneys' fees expert witness to testify because the failure to timely designate was because of inadvertence of counsel. The court further ruled that there was a lack of unfair surprise or prejudice to Beard because, unlike the testimony of other experts, Commercial Indemnity's pleadings contained the request for attorneys' fees from the lawsuit's inception. While the late designation is not good practice, under these circumstances we cannot conclude that the trial court's admission of the testimony was an abuse of discretion. We therefore overrule Beard's fifth issue on appeal.

By its sixth issue, Beard argues that there is no evidence or insufficient evidence to support the district court's award of attorneys' fees because Commercial Indemnity failed to segregate time spent on its contract claim from time spent on its *quantum meruit* claim for which the jury awarded no recovery. When a plaintiff seeks to recover attorneys' fees in a case involving multiple claims, at least one of which supports an award of fees and at least one of which does not, the plaintiff must offer evidence segregating attorneys' fees among the various claims. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10–11 (Tex.1991). An exception to this duty to segregate arises when the attorneys' fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts. *Id.* at 11. Thus, a plaintiff must either segregate the fees among the several claims or establish that the claims are sufficiently interrelated.

Beard did not preserve this issue. If a party does not object to the failure to segregate, it waives any appellate complaint. *Green Int'l v. Solis*, 951 S.W.2d 384, 389 (Tex.1997). In any event, segregation was not warranted. Because the attorneys' fees were awarded for claims arising out of the same transaction and were so interrelated that essentially the same proof is required, segregation is not required. *Stewart Title*, 822 S.W.2d at 11. We overrule Beard's sixth issue.

## CONCLUSION

Having found no reversible error, we overrule Beard's issues on appeal and affirm the judgment of the district court.

David Puryear, Justice, dissenting.

The majority today constructs an opinion from an argument that never arose at trial, was not mentioned by either side in their appellate briefs, and was not discussed by either side during oral argument. The appellants have been defeated by an argument they never had an opportunity to defend against.

According to the majority, "[t]his case involves a surety's rights and obligations under payment and performance bonds as against its bond obligee." This must come as quite a surprise to appellee Commercial Indemnity, who did not advance a single argument based upon the payment and performance bonds which the majority deems pivotal in this case. In fact, at trial Commercial Indemnity's suit was brought pursuant to the original construction contract and the court's charge was based on the construction contract, as were the jury's findings. Indeed, Commercial Indemnity does not dispute that it is subject to the condition precedent created by the contract between Beard and Round Rock. Its defenses to the application of the condition—throughout trial and throughout the appeal—are (1) that Beard first breached by providing inadequate plans and specifications, (2) that substantial performance trumps application of the condition precedent, and (3) equities dictate that Commercial Indemnity not be precluded from recovery. Primarily because I would decide the issue adversely to Commercial Indemnity, but also because I cannot condone case resolution where one side has been denied all opportunity to offer rebuttal, I respectfully dissent.

The majority correctly recognizes that where a condition precedent exists, liability does not arise unless and until satisfaction of the condition occurs. The majority goes on to fashion an *argument* that releases Commercial Indemnity from the application of the condition precedent due to "the intent of the parties" of the surety bond. They accomplish this result by harmonizing "conflicting clauses," of the construction contract and the performance and payment bonds. However, the majority opinion does not clarify which conflicting clauses they are attempting to harmonize.

The opinion speaks to the language of the bonds and the intent of the parties to the bonds. The first salient point to note here is that the bonds were entered into by Commercial Indemnity and Round Rock Construction and the construction contract was entered into by Round Rock Construction and Beard. Therefore, we have three different parties (Round Rock, Beard, and Commercial Indemnity) entering into three separate contracts (construction contract, payment bond, and performance bond) covering two distinct subject matters (construction and bonds). It is no surprise that we might have conflicting clauses. However, we are never told what the "conflicting clauses" are that will not allow honoring the clear and express language of the original construction contract. The majority makes the conclusory statement that the intent of the parties makes clear that the requirement of an all-bills-paid affidavit from the contractor is not a requirement imposed upon the surety. There is no logic or evidence which will support this conclusion. The language of the performance bond indicates that the surety will "complete the [construction] contract *in accordance with its terms and conditions,*" which would include the condition that the all-bills-paid affidavit be provided before final payment by Beard is due. (Emphasis added.)

The contract between Beard and Round Rock provided as follows:

¶ 9.10.2 Neither final payment nor any remaining retained percentage shall be-

come due until the Contractor submits to the Architect (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner ... might be responsible ... have been paid or otherwise satisfied....

Therefore, the contract expressly makes the all-bills-paid affidavit a condition precedent to payment of the final application and retainage and, as conceded by Commercial Indemnity, is a condition to which Commercial Indemnity is subject. In addition, as noted by the majority, such an affidavit is also required by section 53.085 of the property code. Section 53.085 states in pertinent part:

(a) Any person who furnishes labor or materials for the construction of improvements on real property shall, if requested and as a condition of payment for such labor or materials, provide ... an affidavit stating that the person has paid each of the person's subcontractors, laborers, or materialmen in full....

Tex. Prop.Code Ann. § 53.085(a) (West Supp.2002)

It is undisputed that Beard made several requests for the all-bills-paid affidavit. It is also undisputed that Commercial Indemnity did not provide, and has not provided to date, this affidavit, despite Beard's requests. The purpose of the affidavit is to enable Beard to deliver marketable title on the lots sold to builders or consumers. The majority writes that Commercial Indemnity's president, Schuler, testified that all claims and liens were paid. This assertion has no basis in the record. Schuler's testimony, in the most favorable light, was that "to the best of my knowledge everybody has been paid," and therefore no affidavit was necessary.

Clearly, Commercial Indemnity brought suit under the original construction contract. A party seeking to recover under a contract must prove it has met all conditions precedent. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 283 (Tex.1998); *Trevino v. Allstate Ins. Co.*, 651 S.W.2d 8, 11 (Tex.App.-Dallas 1983, writ ref'd n.r.e.). If a contract contains conditions precedent, there must be some allegation by the plaintiff that the conditions have been met. *Texas Int'l Airlines v. Wits Air Freight*, 608 S.W.2d 828, 831 (Tex.Civ.App.-Dallas 1980, no writ). Texas Rule of Civil Procedure 54 states:

In pleading the performance or occurrence of conditions precedent, it shall be sufficient to aver generally that all conditions precedent have been performed or have occurred. When such performances or occurrences have been so plead, the party so pleading same shall be required to prove only such of them as are specifically denied by the opposite party.

Tex.R. Civ. P. 54.

Commercial Indemnity did not plead that all conditions precedent were met in either its original petition or its first amended petition, as required by Rule 54. In fact, the only time Commercial Indemnity addressed the conditions precedent in its pleadings was by its special exception to Beard's answer that Commercial Indemnity failed to satisfy conditions precedent. In its special exception, filed five days before trial, Commercial Indemnity only says that Beard has not pleaded the issue with sufficient particularity and that Beard failed to identify the specific conditions that were not met.[1]

---

**1.** Beard's efforts to obtain a ruling from the trial court on this issue included requested and denied jury instruction, motion for directed verdict, and motion for take-nothing judgment.

If a plaintiff fails to plead performance of the conditions precedent he may still obtain judgment on his cause of action if he meets his burden of proving all essential elements of the cause, including performance of conditions precedent. *Grimm v. Grimm,* 864 S.W.2d 160, 162 (Tex.App.-Houston [14th Dist.] 1993, no writ); *Trevino,* 651 S.W.2d at 11. Performance of any condition precedent is an essential element of the plaintiff's case. *Trevino,* 651 S.W.2d at 11. In *Trevino,* the court stated that "[t]he law is clear that performance of a condition precedent is an essential element of the plaintiff's case on which the plaintiff has the burden of proof unless he alleges performance of all conditions precedent and the defendant fails to deny specifically performance of the conditions, as required by rule 54." *Id.* (citing *Texas Int'l Airlines,* 608 S.W.2d at 830–31); *see* Tex.R. Civ. P. 54.

Commercial Indemnity first argues that it should be excused from complying with the contract's condition precedent because the delay in completing the construction project was due to Beard's inadequate subdivision construction plans. This argument is without merit, despite the majority's assertion that the jury verdict, by implication, should be read to mean this. First, Commercial Indemnity did not plead, prove, or submit this issue at trial so there ultimately is no finding that Beard's subdivision plans were in fact inadequate.[2] Second, even if that were true, at most it would only be a defense to the liquidated damages owed due to late completion of the project, not to Commercial Indemnity's failure to comply with the condition precedent.

Texas courts may excuse non-performance of a condition precedent without other reason if the condition's requirement " '(a) will involve extreme forfeiture or penalty, *and* (b) its existence or occurrence forms no essential part of the exchange for the promisor's performance.' " *Lesikar Constr. Co. v. Acoustex, Inc.,* 509 S.W.2d 877, 881 (Tex.Civ.App.-Fort Worth 1974, writ ref'd n.r.e.) (quoting *Restatement (First) of Contracts* § 302) (emphasis added); *see also Varel v. Banc One Capital Partners, Inc.,* 55 F.3d 1016, 1018 (5th

**2.** Commercial Indemnity relies on *Shintech Inc. v. Group Constructors, Inc.,* 688 S.W.2d 144 (Tex.App.-Houston [14th Dist.] 1985, no writ), for the proposition that Beard's inadequate architectural plans caused significant dely in completing the construction project; therefore, it breached the contract and, consequently, waived its procedural right to withhold payment until an all-bills-paid affidavit was received. In *Shintech,* the appellant owner breached its contract when its acts delayed the builder's performance of the contract. The owner argued that because the builder failed to comply with the contract's written notice requirements (which occurred subsequent to a breach by the owner), the builder did not fulfill the conditions precedent for claiming breach of contract. The court held that "[w]hen an owner breaches a construction contract, it relinquishes its contractual procedural rights *concerning change orders and claims for additional costs.*" *Shintech,* 688 S.W.2d at 151 (citing *North Harris County Junior Coll. Dist. v. Fleetwood Constr. Co.,* 604 S.W.2d 247, 254 (Tex.Civ.App.-Houston [14th Dist.] 1980, writ ref'd n.r.e.)) (emphasis added). Commercial Indemnity misconstrues and reads too much into *Shintech's* holding. First, the holding comes from a case where very specific findings of breach by the owner were made, findings absent in the present case. The court in *Shintech* held that a contractor is entitled to recover damages from an owner for *losses due to delay* and hindrance of its work if it *proves:* (1) that its work was delayed or hindered; (2) that it suffered damages due to the delay or hindrance; and (3) that the owner was responsible for the act which cased the delay or hindrance. Commercial Indemnity did not plead or prove that Beard's subdivision plans were inadequate or that the alleged inadequacy resulted in any delay. Additionally, the jury was not asked, nor did it find, that Beard supplied inadequate subdivision construction plans.

Cir.1995); *Restatement (Second) of Contracts* § 229 (replacing *First Restatement's* § 302, cmt. B (1981)) ("In determining whether the forfeiture is disproportionate a court must weigh the extent of the forfeiture by the obligee against the importance to the obligor of the risk from which he sought to be protected and the degree to which that protection will be lost if the non-occurrence of the condition is excused to the extent required to prevent forfeiture."). Texas courts have focused on the second part of this test in examining whether performing the condition precedent was the object of the contract or merely incidental to it. *Varel,* 55 F.3d at 1018.

Neither party claims the contract in this case is ambiguous. It clearly and expressly provides that the submission of an all-bills-paid affidavit is a condition precedent to final payment. Additionally, as previously noted, such an affidavit is also required by section 53.085 of the property code "as a condition of payment," if requested. Beard repeatedly requested this affidavit. Commercial Indemnity offered no good reason for not producing the affidavit. In fact, Commercial Indemnity's president testified that any responsible owner would want an affidavit from the contractor that there were no outstanding bills. Beard's real estate lawyer testified that to get title insurance special arrangements had to be made with the title company. It cannot be said that this condition precedent was incidental to the contract. Beard clearly sought to be protected from unreleased liens and potential title problems by conditioning final payment on the receipt of an all-bills-paid affidavit. For the majority to conclude that "the intent of the parties makes clear that [the affidavit] is not a requirement also imposed upon the surety," it must *totally* ignore the risk

from which Beard sought to be protected. The majority equated the existence of the payment bond with absolute protection for Beard, concluding that "[l]ien claimants thus have recourse as against the surety." This assertion ignores the obvious—liens may still be filed despite the existence of a payment bond. Clearly, Beard has a strong interest in requiring the production of the affidavit.

The supreme court has recognized a limitation to a party's ability to enforce the requirement of an all-bills-paid affidavit. In *Citizen's National Bank v. Texas & Pacific Railway Co.,* 136 Tex. 333, 150 S.W.2d 1003 (1941), the Railway Company's contract with the contractor allowed them to withhold final payment until "the Contractor ha[d] furnished written evidence satisfactory to the Railway, that he ha[d] paid in full all amounts that may be due by him to any and all persons who may have performed labor or furnished material or supplies to the Contractor in connection with the work." *Id.* at 1005. The supreme court held that this requirement was placed in the contract to "protect the Railway against those who might claim liens against it under our lien statutes." *Id.* at 1007. Because it "conclusively" appeared that no liens were or had ever been attempted to be fixed against the Railway, and because the limitation period had expired under which any lien could be fixed, enforcement of the requirement was deemed to be no longer of any benefit to the Railway. *Id.* at 1005, 1007.

Following this reasoning, the *Lesikar* court held that where a plaintiff subcontractor came forward with evidence that established "as a matter of law that the plaintiff ha[d] in fact prior to trial fully paid all such bills"[3] and the time had

---

**3.** The testimony of the general managers of

the plaintiff as to the fact that all bills had

passed in which a lien against the defendant contractor could be filed, the requirement of an all-bills-paid affidavit was no longer of any benefit to the defendant and would not be strictly enforced. *Lesikar Constr. Co.*, 509 S.W.2d at 879, 881. These cases establish that a plaintiff contractor such as Commercial Indemnity must conclusively establish that all bills had been paid prior to trial and that the time had expired under which any mechanic's lien could be fixed against the defendant. Commercial Indemnity must show that it had obtained releases for all possible liens that could be filed against the property. It is not enough for Commercial Indemnity to assert that it does not recall any lawsuits being filed for nonpayment. It must be able to establish that it has otherwise met the purpose of the all-bills-paid affidavit by showing that all bills have been paid and that the defendant is beyond peril of any lien arising out of the contractor's work. Commercial Indemnity has failed to meet this burden and therefore may not be heard to speak from its "equities" platform either. For Commercial Indemnity to advance its equities argument, it must be able to show that Beard is not at risk of suffering from outstanding claims. This, it cannot do.

For example, Beard points us to a letter from Commercial Indemnity listing several outstanding claims, including one claim which Commercial Indemnity stated it did not intend to pay because it was filed late and one claim Commercial Indemnity stated it disputed. The burden is on the plaintiff to conclusively establish that it has no claims which have been or can be fixed against the defendant. This evidence goes only to show that Beard has effectively rebutted any attempt by Commercial Indemnity to meet this burden. In a post-submission letter, Beard once again refers to this letter as evidence that claims remain open. No response has been forthcoming from Commercial Indemnity. Don Bird, Beard's real estate attorney, testified that Beard had received notice of mechanic's and materialmen's liens and that liens in fact interfered with obtaining clear title to some of the property, causing some lots to possibly be sold with liens attached. This also rebuts any attempt by Commercial Indemnity to show that it has conclusively established fulfillment of its requirement to protect Beard from all liens that could be filed.

The contract specified that final payment was subject to an express condition precedent. When a party breaches a contract by failure to perform a condition precedent, it affects the enforceability of the provision to which the condition is attached. *City of Alamo v. Garcia*, 878 S.W.2d 664, 665 (Tex.App.-Corpus Christi 1994, no writ). The provisions of the contract are clear that an all-bills-paid affidavit must be provided before final payment would be owed. This affidavit was a condition precedent and in the absence of Commercial Indemnity providing the affidavit or conclusively establishing that it obtained all releases to *all* liens that had been or could be filed against Beard prior to trial, there is no liability or obligation on Beard's part and there can be no breach of contract by it.[4] To give this clause in the

---

been paid prior to trial was undisputed by the defendant. *Lesikar Constr. Co. v. Acoustex, Inc.*, 509 S.W.2d 877, 879 (Tex.Civ.App.-Fort Worth 1974, writ ref'd n.r.e.).

**4.** That an all-bills-paid affidavit can be a condition precedent to recovery of final payment under a contract has long been understood both in Texas and outside the state. *See Citizens Nat'l Bank v. Texas & P. Ry. Co.*, 136 Tex. 333, 150 S.W.2d 1003, 1006 (1941); *see also Holding Elec., Inc. v. Roberts*, 530 So.2d 301, 303 (Fla.1988) (stating that Florida statute requiring all-bills-paid affidavit prior to final payment "is a condition precedent to main-

contract any other construction would render the all-bills-paid affidavit requirement absolutely meaningless. Thus, Commercial Indemnity, having failed to fulfill the condition precedent, was not entitled to final payment.[5]

### Substantial Performance

Commercial Indemnity next argues that even if it is found to have breached the contract by failing to provide an all-bills-paid affidavit, it may still collect damages pursuant to the substantial performance doctrine. Commercial Indemnity asserts that in the case of construction contracts, the doctrine of substantial performance allows recovery to a contractor who has breached, but substantially performed, its contract. *Dobbins v. Redden*, 785 S.W.2d 377, 377 (Tex.1990). The question this Court must answer is whether substantial performance excuses the breach of an express condition precedent. I would hold that it does not.

While at one time the common law required strict compliance with the terms of a contract, that rule has been relaxed in the law of building contracts by the doctrine of substantial performance. The doctrine of substantial performance is an equitable doctrine which allows a builder who has breached, but nevertheless substantially completed a building contract, to recover in a contract action. *Id.* This doctrine is intended to protect the right to compensation of those who have materially and substantively performed so that their right to compensation is not forfeited by mere technical, inadvertent, or unimportant omissions or defects. Stated another way, any breach that may have been committed is immaterial. *See* 15 *Williston on Contracts* § 44.52 (4th ed.2000).

The doctrine of substantial performance does not primarily concern itself with the substantial performance of a "condition" but with the substantial performance of an agreed exchange—the contractor's promise to build and the owner's promise to pay a certain price for the construction. *See* 8 *Corbin on Contracts* § 36.2 (rev. ed.1999). *Corbin on Contracts* succinctly illustrates the application:

> "... it is not with express conditions or interpretation that we are now primarily concerned. We are now dealing with a contract that consists of two exchanged promises requiring the rendition of two promised performances, without making either promise expressly conditional on anything. The builder promises to build and the owner promises to pay".
>
> . . . .
>
> It is substantial performance of what the builder promised to do, of the construction work, or the equivalent for which the owner has promised to pay, that is the 'condition' of the owner's duty to pay. It is not substantial performance of 'a condition' that must be rendered;

taining a lien foreclosure suit"); *Henderson v. Cochran*, 213 Ga. 642, 100 S.E.2d 910, 913 (1957) ("It is clear that the terms of the contract [requiring an all-bills-paid affidavit] require, as a condition precedent to final payment thereunder, that the contractor furnish evidence that all bills for labor and material have been paid or that liens have been waived."); *Buttrick Lumber Co. v. Collins*, 202 Mass. 413, 89 N.E. 138, 139 (1909) ("But, if earned, [final payment] was not payable if there were outstanding mechanic's liens at the date of the plaintiff's writ, for which secu-

rity must be given as called for by the contract.").

5. This raises the issue of entitlement to any amount separate and apart from the final payment, since Beard withheld both the seventh payment and the final payment. However, Commercial Indemnity did not plead for any amount other than the outstanding amount, nor were relevant jury findings obtained which might have established entitlement.

'substantial performance' *is* the condition—the fact that must exist before payment is due.

*Id.* Thus, substantial performance is ordinarily not applicable to excuse the nonoccurrence of an express condition precedent to a contract. *See* 15 *Williston on Contracts* § 44.53. Where the parties have not made it clear that literal and exact compliance is necessary, substantial performance will suffice; however, general acceptance of the doctrine of substantial performance does not mean that the parties may not expressly contract for literal performance. In other words, if the terms of an agreement make strict performance an express condition precedent to recovery, substantial performance will not be sufficient. *Id.*

Express contractual conditions must be literally met or performed, as opposed to constructive conditions, which arise and are implied by the courts. *See Parkview Gen. Hosp., Inc. v. Eppes,* 447 S.W.2d 487, 490–91 (Tex.Civ.App.-Corpus Christi 1969, writ ref'd n.r.e.); 8 *Corbin on Contracts* § 30.11. A constructive condition is neither an express condition nor an implied condition, rather it is a product of courts to do equity, independent of the intention of the parties, *unless language of the contract indicates a contrary intent. See Nutt v. Members Mut. Ins. Co.,* 474 S.W.2d 575, 576 (Tex.Civ.App–Dallas 1971, writ ref'd n.r.e.); 8 *Corbin on Contracts* § 30.11. Therefore, a constructive condition will fail in the face of an express condition.

Similarly, substantial performance, also being a creature of equity, must yield to the literal application of an express condition precedent. An express condition precedent must be met for liability to arise. *See Centex Corp. v. Dalton,* 840 S.W.2d 952, 956 (Tex.1992); *Hohenberg Bros. Co. v. George E. Gibbons & Co.,* 537 S.W.2d 1, 3 (Tex.1976). The substantial performance doctrine, therefore, applies to

constructive conditions precedent and not to express conditions precedent. While the jury found that both parties breached the construction contract, there was no finding as to who first breached, contrary to the majority's implying that the jury found that Beard breached first. Because there was no finding that Beard first breached the contract, the performance of the condition precedent by Commercial Indemnity was a question of law that the trial court should have resolved. While liability may have arisen as to amounts other than "final payment" and "retainage," there could be no liability as to those amounts absent Commercial Indemnity's proof of satisfaction of the condition precedent.

There are no Texas cases that have addressed the issue of whether the doctrine of substantial performance applies in construction contracts when there are express conditions precedent designed to protect an owner from potential liability. Jurisdictions that have addressed this issue have held that the doctrine of substantial performance only applies in the absence of express conditions precedent. *See e.g., DeValk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326 (7th Cir.1987) (stating that although substantial performance rule seems to derive in part from maxim, "The law abhors a forfeiture," it applies only in absence of conditions precedent); *Della Ratta, Inc. v. American Better Cmty. Developers, Inc.,* 38 Md.App. 119, 380 A.2d 627 (Md.Ct.Spec.App.1977) (holding substantial performance doctrine applies to constructive conditions precedent and not to express conditions); *Witherell v. Lasky,* 286 A.D. 533, 145 N.Y.S.2d 624 (N.Y.App.Div.1955) (holding that appellants' motion to dismiss should have been granted based on contractor's failure to comply with condition regarding submission of evidence of payment of po-

tential lienors, together with his admission, untempered by any valid excuse). The rationale of these courts seems to be based on the well-settled law that one who executes a contract may protect himself from liability by a distinct and express agreement that liability will not arise until there has been compliance with certain conditions.

Although I recognize the harsh results that may be occasioned by a failure to perform a condition precedent, the complete failure to perform the prerequisite which the parties considered sufficiently substantial to make it a condition precedent to payment, cannot be excused. Therefore, I would hold that Commercial Indemnity is not entitled to damages for breach of contract because it has failed to meet the requirements of the contract. Specifically, Commercial Indemnity failed to submit an all-bills-paid affidavit which was an express condition precedent to final payment. In order to be entitled to final payment, Commercial Indemnity must either provide the affidavit or conclusively establish that all bills have in fact been paid and Beard is beyond all peril as to liens that may be filed against it.

As its seventh issue, Beard asserts that the jury's finding of zero damages for Beard was legally and factually insufficient. I concur in the result reached by the majority.

As a final matter, Beard complains of the award of attorney's fees in this case to Commercial Indemnity. Because I would find that the damage award to Commercial Indemnity must be reversed, I would reverse the award of attorney's fees to Commercial Indemnity and hold that neither party recover attorney's fees.